NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0946n.06

No. 11-1520

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE WESTERN DISTRICT OF |
| DARELLEE DOMINIQUE GORDON, | ) MICHIGAN |
| | ) |
| Defendant-Appellant. | ) |

Before:  NORRIS, McKEAGUE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge.  Darellee Gordon challenges his conviction and sentence for possession of an unregistered sawed-off shotgun.  *See* 26 U.S.C. § 5861(d).  Gordon contends that the evidence was insufficient to support his conviction, that the district court should have excluded evidence of his gang membership, and that his entire federal sentence ought to run concurrently with his sentence on state charges.  We affirm.

I.

On April 8, 2010, Gordon's girlfriend contacted the Battle Creek police to request that officers keep the peace at her apartment while she collected her belongings to move out.  She said she was fed up with the "rude, disrespectful people" who were in her apartment "all the time" at Gordon's invitation.  (Gordon himself had unlimited access to the apartment.)  When officers arrived, they noticed four or five young men at the rear of the property.  The young men left

immediately. One officer then spotted a Molotov cocktail and graffiti markings on the wall. Among the markings were the letters "M.O.B." "M.O.B." was short for the name of a local street gang, "Money Over Bitches." The officers left around noon.

That evening, another officer arrived at the apartment to investigate further. The owner gave the officer access to the apartment. In the main room, the officer found a hacksaw—on which he noticed "small tiny particles of what looked like sawdust." Nearby, the officer found the wooden "butt of what appeared to be a shotgun."

The detective found a shotgun on the stairway leading to the basement. The butt had been partly sawed off. What remained was wrapped in duct tape. "The very end of the barrel" had also been removed and was located six steps away. The cut through the barrel was jagged, suggesting it had been removed with a handsaw rather than a power saw. With portions of the butt and barrel of the gun removed, the gun was small enough to conceal inside a jacket.

The police arrested Gordon (apparently based on his suspected involvement in a fatal drive-by shooting several days earlier). He signed a form acknowledging that he understood his *Miranda* rights. Gordon then admitted that he was a member of the M.O.B. gang. He also said that he lived in the apartment where police found the shotgun.

Thereafter, the police examined fingerprints that they found on the duct tape. Three of the prints were of sufficiently "suitable quality" for use in identification. Several layers of tape separated one print from the other two; all three matched fingerprints from Gordon's left hand.

Under federal law, a shotgun must be registered if its barrel is shorter than 18 inches or if it is modified and the overall length is less than 26 inches. *See* 26 U.S.C. § 5845(a). The government

concluded that the sawed-off shotgun here met the registration requirement and indicted Gordon under 26 U.S.C. § 5861(d) for possessing the gun without registering it. Before trial, Gordon filed a motion to suppress information relating to his membership in M.O.B., arguing that it was inadmissible character evidence under Rule 404(b). The district court denied the motion. It explained that the evidence helped demonstrate Gordon's "motive and opportunity, knowledge, and intent to possess an unregistered weapon"—all permissible purposes under Rule 404(b). Any prejudice that might result from admission, the court added, could be "cured with a limiting instruction."

At trial, an officer testified to Gordon's gang membership. Another officer described the workings of Gordon's gang, saying that M.O.B.'s "main operation is violence towards [] rival gang members which involves firearms." The officer added that M.O.B. members preferred guns that could be "easily concealed on their person." Gordon's girlfriend also testified that she had heard Gordon talk about guns. The jury convicted him.

The probation department prepared a presentence report. The report revealed that Gordon had recently been charged in state court with murder and several gun offenses related to the murder. According to the report, the murder charge alone required an offense level of 33, which trumped the lower offense level otherwise applicable based on Gordon's federal and state gun offenses. *See* U.S.S.G. § 2K2.1(c)(1); § 2A1.2(a). The report suggested, however, that the district court order the sentence to run concurrently with the state-court sentence. After the probation department prepared the report, Gordon was convicted on the murder and gun counts in state court.

The court imposed a sentence of 120 months, 51 of which were to be served consecutively to Gordon's state sentence. This appeal followed.

II.

A.

Gordon contends that no rational trier of fact could have found him guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). He says that the only evidence that connects him to the sawed-off shotgun is the testimony that he lived in the apartment where the gun was found. Gordon says that many others had access to the apartment and that such non-exclusive possession of the apartment is insufficient to show that he exercised dominion over a gun found there. *See generally United States v. Bailey*, 553 F.3d 940, 944 n.3 (6th Cir. 2009). Moreover, Gordon argues, the government failed to show that he possessed the gun after it had been shortened to a length that required registration. *See* 26 U.S.C. § 5845(a); *Staples v. United States*, 511 U.S. 600, 619 (1994). Gordon asks that we reverse his conviction.

But the government produced evidence at trial that Gordon was the person who shortened the shotgun and thus had "'knowing . . . dominion and control'" over it at the time the gun required registration. *United States v. Johnson*, 119 F. App'x 114, 119 (6th Cir. 2002) (citation omitted). Specifically, the police found Gordon's left-hand fingerprints on the sticky side of the duct tape that had been wrapped around the sawed-off stock of the shotgun. The tape's glue had, during the wrapping process, lifted prints that had originally been deposited on the smooth side of the tape. According to one witness, such "reverse prints" are most likely to be discoverable when the culprit's hands are covered in a powdery substance—like sawdust. Moreover, the prints were located on

multiple layers of the tape, which suggests that Gordon was the one who wrapped the tape around the stock. If so, Gordon was also very likely to have possessed the gun after the stock had been sawed off, since the very purpose of the tape was to protect the shooter from the jagged edge left from the cut. The end of the barrel, moreover, was found nearby and appeared to have been cut off with the same hacksaw used to remove the stock. That indicates that Gordon removed the barrel as well as the stock. Finally, Gordon's undisputed membership in M.O.B. suggested that he had motive and opportunity to possess a sawed-off shotgun, given that group's preference for concealable weapons. The evidence, viewed in the light most favorable to the government, was sufficient to support Gordon's conviction. *See generally Jackson*, 443 U.S. at 319.

B.

Gordon next argues that the district court erred in admitting evidence of his gang membership. Rule 404(b) allows admission of a defendant's prior bad acts to show, for example, the defendant's motive or identity, but not to show the defendant's general propensity to commit bad acts. Gordon insists that evidence of his gang membership was relevant only to show propensity. Thus, Gordon contends, the district court should have excluded that evidence.

District courts have ample discretion, however, in deciding whether particular bad-acts evidence is admissible for a proper purpose. *See, e.g.*, *United States v. Allen*, 619 F.3d 518, 524 n.2 (6th Cir. 2010) (reviewing district court's proper-purpose determination for an abuse of discretion); *United States v. Mack*, 258 F.3d 548, 553 n.1 (6th Cir. 2001). Here, the district court had several good reasons to admit evidence of Gordon's gang membership. The first was motive: Gordon may have wanted the sawed-off shotgun because he belonged to a violent gang that preferred small,

concealable weapons. *See generally United States v. Harris*, 587 F.3d 861 (7th Cir. 2009). The second was opportunity: Gordon's gang membership helped to explain how Gordon might have gotten the shotgun and where he learned to shorten the gun to a concealable length. The district court was therefore correct to conclude that Gordon's gang membership was admissible for proper purposes under Rule 404(b).

Gordon nonetheless insists that the evidence of his gang membership was more prejudicial than probative. The evidence was particularly prejudicial, Gordon says, because one witness mentioned that members of M.O.B. "dealt in controlled substances." But the government and the district court both minimized the prejudicial effect of the gang evidence. As Gordon concedes, the government declined to mention his gang membership in closing argument. And, before deliberations began, the district court instructed the jury that it could only consider the gang-membership evidence for purposes of Gordon's motive, opportunity, intent, and knowledge of the gun's characteristics. This instruction was not perfect, since it permitted consideration of the evidence for purposes that do not apply here. *See generally United States v. Merriweather*, 78 F.3d 1070, 1076-77 (6th Cir. 1996). But it was mostly correct and foreclosed consideration of Gordon's gang membership as evidence of Gordon's propensity to commit bad acts. (Gordon has waived any challenge to the instruction itself, since he mentions it for the first time in his reply brief. *See Clemente v. Vaslo*, 679 F.3d 482 (6th Cir. 2012).) As for the single instance in which a witness mentioned M.O.B.'s association with drugs, the district court quickly instructed the jury to disregard the testimony. Thus the prejudicial impact of the gang evidence was limited. Given the relevance of that evidence, the district court did not err by admitting it. *See generally Allen*, 619 F.3d at 525.

IV.

Finally, Gordon argues that U.S.S.G. § 5G1.3(b) required the district court to impose a federal sentence that runs concurrently with his state sentence. That provision says that the court "shall" make the federal sentence run concurrent to the sentence for any other "offense that is relevant conduct to the" federal offense and that "was the basis for an increase in the offense level." Gordon contends that his state murder and gun offenses were relevant conduct here and that they increased his offense level.

We need not decide, however, whether § 5G1.3(b) applies in this case. *Compare United States v. Hall*, 632 F.3d 331, 337 (6th Cir. 2011). For the district court *agreed* with Gordon that § 5G1.3(b) applies. *See* R. 76 at 24. It nonetheless decided to disregard § 5G1.3(b), as it is entitled to do, in order to achieve the sentencing goals listed in 18 U.S.C. § 3553(a). *See generally Kimbrough v. United States*, 552 U.S. 85, 101-02 (2007); *United States v. Booker*, 543 U.S. 220 (2005). The court explained that Gordon is "extremely dangerous" and that the federal government has an interest in Gordon's punishment that "cannot . . . be noticed or have an impact on this case without the imposition of at least a partial consecutive sentence." R. 76 at 24-25. That explanation was an adequate one. *See generally United States v. Herrera-Zuniga*, 571 F.3d 568, 586-87 (6th Cir. 2009). Thus, the district court did not err in imposing a sentence that will run consecutively, in part, with Gordon's state sentence.

The district court's judgment is affirmed.