NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0359n.06

No. 18-6038

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 15, 2019
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff–Appellant, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE MIDDLE |
| | ) DISTRICT OF TENNESSEE |
| XZAVEON PEETE, | ) |
| | ) |
| Defendant–Appellee. | ) **OPINION** |
| | ) |

Before: MOORE, COOK, and READLER, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellee Xzaveon Peete is charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). Plaintiff-Appellant United States of America appeals the district court's order granting Peete's motions in limine to exclude evidence of Peete's gang affiliation and involvement in a shooting in October 2013. Because we conclude that evidence of the shooting and Peete's gang affiliation is "res gestae," or intrinsic evidence, and that evidence of Peete's gang affiliation was admissible under Federal Rule of Evidence 404(b) to show his motive and opportunity to possess the firearm described in the indictment, we **REVERSE** the district court's order and **REMAND** the case to the district court for further proceedings consistent with this opinion.

## I. FACTUAL & PROCEDURAL BACKGROUND

The following facts are taken from the government's proffer of the evidence that it intends to present at trial. *See* R. 45 (Gov't Opp'n to Def.'s Mot. to Exclude at 1–5) (Page ID #209–13). The district court used this proffered evidence in resolving Peete's motions in limine. R. 54 (Order at 2–5) (Page ID #239–42).

On October 28, 2013, a United States postal employee became suspicious of a package that had been shipped from California to a house in Murfreesboro, Tennessee. R. 45 (Gov't Opp'n at 1) (Page ID #209). The postal employee conducted a controlled delivery of the package; a woman, Witness One ("W-1"), answered the door and accepted the package. *Id.* When officers from the Rutherford County Sheriff's Office spoke with W-1 later that day, she consented to a search of the package. *Id.* Officers discovered five pounds of marijuana in the package. *Id.* at 1–2 (Page ID #209–10). W-1 stated she had received the package for her boyfriend; W-1 was subsequently arrested. *Id.* at 2 (Page ID #210).

Following W-1's arrest, Witness Two ("W-2"), the uncle of W-1, became upset with W-1's boyfriend, as W-2 believed that W-1's boyfriend had carelessly gotten W-1 in trouble for the marijuana delivery. *Id.* W-2 was a "ranking member" of the Gangster Disciples ("Disciples"), a street gang operating in the Middle District of Tennessee. *Id.* According to Witness Three ("W-3")—also a member of the Disciples—in response to W-1's arrest, W-2 enlisted members of the Disciples' "security team" to retaliate against W-1's boyfriend. *Id.* Peete was a member of the Disciples' security team and was expected to be armed at all times. *Id.*

Later on during that same day, multiple witnesses observed a confrontation between two groups of men, including W-1's boyfriend. *Id.* Three witnesses saw one man "produce a long-barreled black revolver" and shoot another man, Witness Four ("W-4"), during the confrontation. *Id.* The shooter was described as being a light-skinned African-American man in his early-to-mid-20s, approximately six feet tall, and being "thin" and weighing approximately 180 pounds. *Id.* Peete's booking sheet described him as being 25 years old, 5'11'', and 150 pounds. *Id.* at 2–3 (Page ID #210–11). W-4 survived the shooting. *Id.* at 3 (Page ID #211). Two witnesses then observed the same man walk toward W-1's boyfriend, who was on the ground, and point the gun at W-1's boyfriend's head. *Id.* The witnesses believed the shooter was about to shoot W-1's boyfriend, but the shooter fled when the witnesses shouted at the shooter. *Id.*

As the shooter ran away, he ran past Witness Five ("W-5"); W-5 observed the shooter with "a long-barreled revolver" during the altercation and also saw the shooter flee the scene. *Id.*; *see also* R. 58 (Mot. Hr'g Tr. at 17) (Page ID #273). W-5 later informed authorities that he believed the shooter was familiar to him and that he had a "lazy" left eye. R. 45 (Gov't Opp'n at 3) (Page ID #211). The defendant lost an eye at a young age. *Id.* W-5 subsequently identified Peete as the shooter in a six-person photo array. *Id.* Another witness[1] who was shown a six-person photo array identified a different individual as the shooter. *Id.* at 3 n.2 (Page ID #211). After the shooter ran past W-5, W-5 observed the man get into a Pontiac-type vehicle and drive away. *Id.* at 3 (Page ID #211). The police subsequently located the owner of the vehicle, Witness Six ("W-6"). *Id.* Before

---

[1]It is unclear from the government's proffer of evidence whether this "other witness" observed (1) the man shoot W-4, (2) the shooter assault W-1's boyfriend, or (3) both.

W-6 met with the police, Peete asked W-6 to tell police that W-6 had just arrived to the area where the car had been found and to not give the police his (Peete's) name. *Id.*

Later during the evening of October 28, 2013, W-3 placed a recorded phone call with Peete to discuss the confrontation. *Id.* W-3 stated that if W-4 (the shooting victim) was acting unreasonably, "it is what it is." *Id.* Peete responded: "Tell 'em I'll get every one of them bitches." *Id.* at 3–4 (Page ID #211–12). W-3 also told Peete that W-2 had erred by getting Disciples members involved in a personal issue between W-2 and W-1's boyfriend. *Id.* at 4 (Page ID #212). In a later, unrecorded phone call, Peete told W-3 that it was "fucked up" that W-2 had involved Disciples members in the altercation and that Peete had gone to the confrontation to assist W-2. *Id.* Peete also stated that he was going to "kill that pussy," which the government contends meant W-1's boyfriend, but that the firearm had jammed. *Id.* According to W-3, the Disciples later determined that the altercation was a personal matter between W-2 and W-1's boyfriend, rather than gang-related business. *Id.* at 5 (Page ID #213). Because of his involvement in the confrontation, Peete was subjected to a "violation," i.e., a three-minute assault by other Disciples members. *Id.*

In late November 2013, Rutherford County probation officers conducted a home visit of Witness Seven ("W-7"), who was an associate of Peete's. *Id.* at 4 (Page ID #212). After W-7 admitted that there were firearms in the house, the probation officers located, among other things, a black .38 caliber revolver and a silver .32 caliber revolver. *Id.* Both revolvers had obliterated serial numbers. *Id.* When asked about the .38 caliber revolver, W-7 informed the police that in "mid- to late October 2013," Peete had arrived at W-7's apartment and asked W-7 if he could leave

4

a black, long-barreled revolver at W-7's residence; W-7 agreed. *Id.* at 5 (Page ID #213). In a phone conversation approximately one week later, W-7 asked Peete what he "had been doing." *Id.* Peete explained that "he had gotten into an altercation with a guy," had "shot the guy," and "had just gotten out of jail in connection with that incident." *Id.* Peete also stated that the gun he had given W-7 was the same gun he had used in the shooting. *Id.* A later examination of the .38 revolver revealed that the firearm was damaged and "produced a firing pin strike that was so off-center that the cartridge used in the test-fire failed to fire." *Id.*

On February 28, 2018, a federal grand jury indicted Peete on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count I), and one count of possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) (Count II). R. 3 (Indictment at 1–2) (Page ID #5–6). Both charges were tied to Peete's possession of the .38 caliber revolver with an obliterated serial number on October 28, 2013. *Id.* Prior to trial, Peete filed two motions in limine. First, Peete filed a motion requesting that the government disclose any evidence of "other crimes, wrongs or acts" that it anticipated introducing under Federal Rule of Evidence 404(b). R. 41 (Mot. for Notice & Hr'g at 1–2) (Page ID #195–96). In an accompanying memorandum, Peete argued against the admission of any evidence relating to the shooting, asserting that it was not background or "res gestae" evidence and was not admissible under Rule 404(b). *Id.* at 5–7 (Page ID #199–201). In his second motion, Peete requested that the district court conduct an evidentiary hearing regarding the admissibility of evidence relating to Peete's gang affiliation. R. 42 (Mot. for Hr'g at 1) (Page ID #203). Peete contended that any such evidence was unfairly prejudicial and thus inadmissible pursuant to Federal Rule of Evidence 403.

*Id.* at 1–3 (Page ID #203–05); Fed. R. Evid. 403 (prohibiting the admission of evidence when the probative value of the evidence is "substantially outweighed by a danger of . . . unfair prejudice"). The government responded in opposition. R. 45. After conducting an evidentiary hearing, R. 58 (Mot. Hr'g Tr.), the district court granted Peete's motions and excluded any evidence relating to Peete's gang affiliation or Peete's identity as the shooter on October 28, 2013, R. 54 (Order). The government filed this timely interlocutory appeal, R. 57 (Notice of Appeal) (Page ID #254), over which we have jurisdiction pursuant to 18 U.S.C. § 3731.

## II. DISCUSSION

"To obtain a conviction under § 922(g), the government must prove three elements: (1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed the firearm specified in the indictment; and (3) the firearm traveled in or affected interstate commerce." *United States v. Brown*, 888 F.3d 829, 833 (6th Cir. 2018) (internal quotation marks omitted). As for Count II, the government is required to show (1) the defendant "knowingly possessed a firearm"; (2) "which had its serial number altered, removed or obliterated"; and (3) the firearm "had been shipped, received or transported in interstate commerce." *United States v. Cobbs*, 233 F. App'x 524, 536 (6th Cir. 2007). The government must also prove "knowledge on the part of the defendant that the firearm he possessed had an obliterated serial number." *Id.*

In an effort to show knowing possession of a firearm with an obliterated serial number, the government intends to put on evidence of Peete's involvement in the shooting, his incriminating statements to W-3 and W-7, and Peete's gang affiliation. Because this evidence is either contemporaneous with Peete's alleged possession of the firearm on October 28, 2013, or is a

6

necessary component of the witnesses' testimony, the government asserts it is admissible as "intrinsic" or "background" evidence, rather than "other act" evidence under Rule 404(b). Appellant Br. at 22–34. Alternatively, the government contends that evidence of Peete's gang affiliation is admissible under Rule 404(b). *Id.* at 42–51. Peete responds that because the government apparently intends to introduce "several witnesses" who will "testify that they had seen the Defendant in the possession of a firearm at one point or another," the evidence of the shooting and Peete's gang affiliation is unnecessary to prove his possession and is unfairly prejudicial. Appellee Br. at 8–12. We examine each piece of evidence in turn.

## A. Evidence of the Shooting & Assault

### 1. Applicable Law & Standard of Review

"Generally, a district court's evidentiary rulings are reviewed for abuse of discretion," including whether evidence was properly admitted or excluded as "background" or "res gestae" evidence. *United States v. Churn*, 800 F.3d 768, 774–75 (6th Cir. 2015) (internal quotation marks omitted).[2] "A district court has abused its discretion when its decision rests on the wrong legal standard, a misapplication of the correct standard, or on clearly erroneous facts." *United States v. Gibbs*, 797 F.3d 416, 422 (6th Cir. 2015).

Generally, under Federal Rule of Evidence 404(b), evidence of a separate "crime, wrong, or other act" is inadmissible "to prove a [defendant]'s character in order to show that on a particular

---

[2]Although "[w]e have 'acknowledge[d] that the distinctions among res gestae, inextricably intertwined evidence, intrinsic evidence, and background evidence [are] far from clear,' . . . we often treat the various concepts similarly." *Churn*, 800 F.3d at 779 (quoting *United States v. Adams*, 722 F.3d 788, 822 n.26 (6th Cir. 2013)) (second and third alterations in original).

occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). However, "[t]his Court recognizes an exception to Rule 404(b) for *res gestae* evidence where the evidence consist[s] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *Brown*, 888 F.3d at 836 (internal quotation marks omitted and alteration incorporated). These "intrinsic acts" are different than "extrinsic acts, which are those that occurred at different times and under different circumstances from the offense charged." *Churn*, 800 F.3d at 779 (internal quotation marks omitted). As we have previously explained:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Such a rule permits the government to "put the charges in the appropriate context" and recognizes that "defendants are not entitled to a 'sanitized' recounting of the facts, and [that] prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events." *Gibbs*, 797 F.3d at 424 (citation omitted). Similarly, because jurors may be less willing to credit a witness who is permitted to testify only in a truncated or "sanitized" manner, prosecutors may present evidence that provides a fuller picture of the charged offense. *See Old Chief v. United States*, 519 U.S. 172, 188 (1997) ("If jurors' expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party." (internal quotation marks omitted and alteration incorporated)).

Importantly, however, even if evidence is properly considered "background evidence," it may nonetheless be inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *Churn*, 800 F.3d at 779. Courts must therefore "err on the side of caution" to ensure that a party does not use this exception as a backdoor to admit otherwise inadmissible Rule 404(b) character evidence. *Gibbs*, 797 F.3d at 425. This is particularly necessary in felon-in-possession cases because "the issue of possession often is tied to an act or acts that are not a part of the indictment." *Brown*, 888 F.3d at 837.

## 2. Res Gestae Determination

Evidence relating to the shooting on October 28, 2013, generally falls into two categories. In the first category are witnesses who observed the shooting of W-4 and the assault of W-1's boyfriend and who also later identified Peete—or someone matching his description—as the individual possessing a "long-barreled black revolver" during that altercation. *See* R. 45 (Gov't Opp'n at 2–3) (Page ID #210–11). In the second category, the government has identified at least two relevant witnesses (W-3 and W-7) who spoke with Peete on or around October 28, 2013, and who are prepared to relay incriminating statements that Peete made regarding both the shooting and Peete's possession of the particular firearm described in the indictment. *Id.* at 3–5 (Page ID #211–13).

In examining the shooting and assault evidence, the district court almost exclusively considered its admissibility in light of Rule 404(b). *See* R. 54 (Order at 9–10) (Page ID #246–47). On appeal, however, "[t]he government is not contending . . . that evidence of the shooting is admissible under Rule 404(b)." Reply Br. at 9. As to whether the evidence was "intrinsic" to

9

Peete's possession of the firearm, the district court did not examine the government's argument in detail and instead summarily concluded that "[t]estimony that Defendant was the shooter on the date in question is also inadmissible as *res gestae* because it is not inextricably intertwined with proving Defendant possessed the firearm at issue." R. 45 (Order at 10) (Page ID #247).[3] Although our review is somewhat hindered by the district court's limited analysis of the government's viable arguments regarding this evidence, we conclude that the district court abused its discretion when it determined that evidence of the shooting is not intrinsic to the charged offense. Moreover, because the probative value of this evidence is not "substantially outweighed" by *unfair* prejudice, we reverse the district court's order excluding this evidence.

As for the witness testimony of the shooting and assault on October 28, 2013, testimony that witnesses saw Peete use the weapon against W-4 and W-1's boyfriend directly "arises" from the underlying charged conduct (possession of a firearm). *Hardy*, 228 F.3d at 748. This evidence also certainly "tends to logically prove an element of the crime charged," as one cannot shoot an individual without possessing a firearm. *United States v. Till*, 434 F.3d 880, 883 (6th Cir. 2006) (quoting *United States v. Luna*, 94 F.3d 1156, 1162 (8th Cir. 1996)). Indeed, as the government explained at oral argument, Peete's possession of the firearm was largely contemporaneous with

---

[3]The district court also explained that "[e]vidence that *a* shooting occurred . . . may be admissible as *res gestae* to the extent it led witnesses to identify Defendant as an individual who possessed a firearm" and left open the possibility that such evidence would be admissible if elicited by the government. R. 54 (Order at 10) (Page ID #247) (first emphasis added). However, the government has made clear that the witnesses are not expected to testify that they observed Peete possess the firearm only after hearing gunshots. Appellant Br. at 35 n.5. Thus, this section of the district court's order is not relevant to the government's appeal.

the shooting and assault, thus making it very difficult for the witnesses to testify about their observations without mentioning those actions. *See* Oral Arg. at 1:12–1:19 ("The shooting *is* the evidence that establishes possession. The possession necessarily occurred during the shooting."); *Gibbs*, 797 F.3d at 424 (noting that one of the reasons for admitting res gestae evidence is that it is very difficult for individuals to testify about "preceding or contemporaneous acts that are incidental but necessary to telling a cogent story"). Additionally, because the shooting and assault were contemporaneous with the underlying charged crime, they would necessarily be temporally and spatially connected to Peete's alleged possession of a firearm. *Hardy*, 228 F.3d at 748–49 (discussing cases permitting intrinsic evidence in which a defendant engaged in drug activities either during a charged conspiracy or a few months before the conspiracy began).

In response, Peete asserts that because various witnesses are "prepared to testify that they have seen the Defendant with a firearm," witness testimony about the shooting is not necessary to prove the government's case. Appellee Br. at 8–9. According to Peete's counsel at oral argument, witnesses could simply testify that they saw Peete "produce" a firearm during an "altercation." Oral Arg. at 18:46–19:07. Such a retelling, however, unreasonably sanitizes the witnesses' testimony and, more importantly, would likely lead the jury to question the credibility of witnesses who would be unable to explain precisely how they observed Peete allegedly possessing a weapon or whether they were sure the firearm was even real. *See Gibbs*, 797 F.3d at 424 (noting that the defendant was not entitled to a sanitized description of the events underlying the charged conduct); *see also Old Chief*, 519 U.S. at 188 (explaining that jurors may inappropriately draw negative inferences against a party that is unable to provide context for important evidence).

11

Moreover, evidence is not rendered extrinsic simply because there is conceivably a way to tell a story without that evidence. Notably, in other possession cases, this court has permitted evidence of otherwise uncharged conduct even when that evidence could have been removed. *See, e.g.*, *United States v. Marrero*, 651 F.3d 453, 470–71 (6th Cir. 2011) (affirming admission of evidence that the defendant fought with the police and attempted to flee because the evidence was intrinsic to the charged conduct—possession of drugs); *Till*, 434 F.3d at 884 (concluding that evidence that drugs were found on the defendant after he was booked at the police station was res gestae to the crime charged—possession of a firearm—because the drug possession made it more likely that the defendant possessed the firearm to protect the drugs). Given all of the considerations discussed above, and mindful of the district court's discretion on evidentiary issues, we nonetheless conclude that the district court abused its discretion when it summarily concluded that evidence of the shooting was not res gestae.[4]

W-3's and W-7's expected testimony about statements that Peete allegedly made in reference to the shooting and assault is also properly categorized as res gestae. In response to W-3's statement that W-4 had been acting like a fool, Peete stated: "Tell 'em I'll get every one of them bitches." R. 45 (Gov't Opp'n at 3–4) (Page ID #211–12). Peete also later told W-3 that he "was going to 'kill that pussy,'" in reference to W-1's boyfriend, "but that the gun had jammed." *Id.* at 4 (Page ID #212). Finally, in reference to the .38 caliber revolver that Peete left at W-7's house, Peete allegedly explained to W-7 "that he had gotten into an altercation with a guy [and]

---

[4]The admissibility of such evidence under Rule 403 will be discussed below.

that he shot the guy." *Id.* at 5 (Page ID #213). Such evidence certainly "arises" from the charged conduct and is "directly probative" of the charged offense, *Hardy*, 228 F.3d at 748, as Peete's statements directly relate to the altercation and, indeed, describe in detail Peete's admitted possession of the firearm. Moreover, we have implicitly approved of the admission of a co-defendant's statements relating to a previous criminal event as res gestae. *See United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995) (concluding that testimony from a co-defendant's cell-mate that the co-defendant had made incriminating statements about a past drug conspiracy involving the defendant was admissible res gestae to prove the past drug conspiracy); *cf. Gibbs*, 797 F.3d at 423–24 (concluding that evidence about a subsequent shooting was not intrinsic evidence to prove the defendant previously possessed a firearm on a separate occasion because the defendant's possession was already completed and the subsequent shooting was a distinct event that was not part of the "story").[5]

As for the timing of Peete's statements, Peete's conversation with W-3 occurred either on October 28, 2013 or soon thereafter, and Peete gave W-7 the .38 revolver in "mid- to late October" and spoke with him about the shooting approximately one week later. *See* R. 45 (Gov't Opp'n at 4–5) (Page ID #212–13). This evidence is sufficiently close in time to constitute "intrinsic" evidence under *Hardy*, 228 F.3d at 749. Furthermore, the same credibility concerns noted above

---

[5]Unlike the defendant in *Gibbs*, Peete's statements to W-3 and W-7 do not concern a separate and distinct event. Rather, because they directly relate to (and, indeed, describe) the altercation on October 28, 2013, they are reasonably part of the "story" underlying the charged conduct. *Cf. Brown*, 888 F.3d at 838 (suggesting that although a victim's statements about the defendant's past domestic violence were not res gestae, the victim's statements about the specific domestic assault underlying the defendant's illegal firearm possession might be).

equally apply to W-3's testimony. If the government were unable to present any testimony about the shooting from the witnesses, W-3 would presumably either be unable to testify about Peete's incriminating statements regarding the altercation or, alternatively, would be required to just vaguely explain that Peete had admitted to "possessing" the firearm. Although technically a true statement, such testimony would obscure the context of Peete's statement and would likely lead the jury to question W-3's credibility and personal knowledge of the events underlying his or her testimony.

Finally, Peete's statements to W-3 that he attempted to shoot W-1's boyfriend, but that the gun jammed, and Peete's explanation to W-7 that he had used the gun to shoot another person, is "directly probative" of the charged offense in Count II (possessing a .38 caliber revolver *with an obliterated serial number*). *Hardy*, 228 F.3d at 749; *see also* R. 3 (Indictment at 1–2) (Page ID #5–6); Appellant Br. at 24–25. Specifically, the indictment charges Peete with possessing a .38 caliber revolver with an obliterated serial number "on or about October 28, 2013." Because Peete was not in direct possession of the firearm when it was found in W-7's apartment, in order to convict Peete on Count II the government must show that the firearm that Peete gave to W-7 in "mid- to late October" is the same firearm as the one Peete allegedly used during the shooting on October 28, 2013. Peete's statements to W-3 and W-7 are "directly probative" of this issue, as they indicate that (1) the revolver Peete gave W-7 had the same mechanical flaw as the one Peete described to W-3, and (2) the revolver was involved in the same October 28, 2013 altercation, during which Peete "shot the guy," i.e., W-4. R. 45 (Gov't Opp'n at 3–5) (Page ID #211–13). The district court, however, failed to address or credit this argument. This failure, as well as all of the

14

factors listed above, illustrate to us that the district court abused its discretion in excluding this evidence as non-res gestae.

### 3. Rule 403 Balancing

As noted above, even when evidence is properly considered res gestae or "intrinsic," it may nonetheless be inadmissible under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403; *Churn*, 800 F.3d at 779.  On review of the proposed evidence, we conclude that because evidence of the shooting and assault is not "unfairly prejudicial," and W-3's and W-7's statements are significantly probative of Peete's knowing possession of a firearm with an obliterated serial number, the district court abused its discretion in excluding this evidence under Rule 403.[6]

First, evidence that witnesses observed Peete allegedly use the firearm to shoot or assault two individuals is highly probative of the charged crime of possession, as use of a weapon necessarily shows possession. *See United States v. Flenoid*, 415 F.3d 974, 976–77 (8th Cir. 2005) (concluding that although another witness had observed the defendant with a firearm independent of a shooting, evidence of the shooting was nonetheless admissible under Rule 403 because "Flenoid's use of the firearm to commit murder does not alter its probative value on the crucial issue of possession").  And while the shooting evidence may be prejudicial to Peete's case, it is

---

[6]Although the district court did not provide any analysis under Rule 403 as to its res gestae determination, it did examine the admissibility of the shooting and assault evidence under Rule 404(b), which in turn requires the district court to consider the probative and unfairly prejudicial impact of the proposed evidence. *See United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007). Consequently, we will review this section of the district court's order to determine whether the shooting evidence should have been excluded under Rule 403.

not *unfairly* prejudicial as it does not "tend[] to suggest decision on an improper basis." *United States v. Houston*, 813 F.3d 282, 291 (6th Cir. 2016). Indeed, if a jury were to conclude that Peete shot W-4 or assaulted W-1's boyfriend, it would necessarily also determine that Peete possessed the weapon; Peete's conviction would not, therefore, be predicated on any improper basis but rather on his actual possession of the firearm.[7] In other words, any damage that the witnesses' statements may cause Peete's case "results from the legitimate probative force of the evidence," rather than some impermissible purpose under Rule 403. *Id.*; *see also United States v. Talley*, 164 F.3d 989, 1000 (6th Cir. 1999) ("[W]e must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." (internal quotation marks omitted)). Finally, even if this evidence was "unfairly prejudicial"—a proposition Peete himself does not significantly develop—we cannot reasonably say that such prejudice "*substantially* outweighed" the probative value of this evidence to Peete's case. Fed. R. Evid. 403 (emphasis added).

---

[7]As the government aptly notes, this reasoning also forecloses the district court's conclusion that evidence of the shooting "will likely result in a mini-trial about the identity of the shooter and confuse the jury because the jury will not ultimately be called on to decide that issue in reaching a verdict." R. 54 (Order at 10) (Page ID #247). Even if the witnesses were permitted to testify only that they observed Peete "possess" a firearm, the jury would still have to determine whether Peete, or a different individual, was the person who actually possessed the firearm. This is particularly true since another witness apparently identified someone other than Peete as the shooter. *See* R. 45 (Gov't Opp'n at 3 n.2) (Page ID #211). Having the jury conclude that Peete was the individual who "possessed" the revolver is not substantively more complicated (or, indeed, any different) than having the jury conclude that Peete was the individual who shot or assaulted someone; both require believing evidence that Peete was, in some way or another, in possession of a firearm on October 28, 2013, during the altercation.

Similar reasoning supports admission of Peete's statements to W-3 and W-7. Additionally, the significant probative value of this evidence and the government's need for it further demonstrates its admissibility under Rule 403. Specifically, along with being highly probative of Peete's possession as charged in Count I, evidence of Peete's statements to W-3 and W-7 is largely necessary for the government to prove Count II. Indeed, without this evidence the government would presumably be able to prove Count II only by eliciting testimony from W-7 that in "mid- to late October," Peete possessed a .38 revolver with an obliterated serial number. Notably, while the "[p]robative value and need for the evidence are separate considerations" under Rule 403, both "weigh in favor of admission." *United States v. Stout*, 509 F.3d 796, 800 (6th Cir. 2007); *see also United States v. Whitt*, 752 F. App'x 300, 306 (6th Cir. 2018) (noting that the district court underestimated the value of the evidence in part because the government's other evidence does not "necessarily provide[] sufficient evidence for the Government to convict"); *id.* (concluding that because "the alternative[ evidence] in this case do[es] not have the same or greater probative value" as the proffered evidence, the court would re-balance the Rule 403 factors, eventually determining to admit the evidence). Given the probative value of these statements, the district court erred in concluding that W-3's and W-7's testimony regarding the shooting was inadmissible under Rule 403.

Importantly, "[o]ur [Rule 403] holding assumes that the district court will give the jury an appropriate limiting instruction" regarding this evidence. *Whitt*, 752 F. App'x at 307. Indeed, the district court appeared to recognize the necessity of a limiting instruction in its order. R. 54 (Order at 10) (Page ID #247). And at oral argument, defense counsel conceded that limiting instructions

17

are the generally accepted remedy when district courts permit such evidence to be admitted and that, were this court to conclude that the proffered evidence was admissible, counsel would expect a limiting instruction be given. Oral Arg. at 22:50—23:24). Due to the possible prejudice caused by evidence of Peete's alleged shooting of W-4 and assault of W-1's boyfriend, we agree, therefore, that at trial, the district court must appropriately provide a limiting instruction to explain that the jury may consider evidence of the shooting or assault only to determine whether Peete knowingly possessed a firearm with an obliterated serial number on October 28, 2013.

## B. Gang Affiliation Evidence

In addition to the evidence of Peete's alleged involvement in the shooting or assault, the government also moved to admit evidence of Peete's gang affiliation with the Disciples both under Rule 404(b) and as res gestae. The district court disagreed and excluded the evidence under both theories. R. 54 (Order at 6–9) (Page ID #243–46). Because evidence of Peete's gang affiliation was res gestae and admissible to show his motive and opportunity to commit the charged conduct under Rule 404(b), we reverse.

### 1. Res Gestae Determination

In reviewing the district court's res gestae ruling, we rely on the same standard of review and applicable law stated above. *See supra* Part II.A.1. On appeal, the government contends that evidence of Peete's gang affiliation was admissible because it illustrates why Peete was involved in the October 28, 2013 altercation, explains W-3's testimony, and shows how various witnesses knew Peete. Appellant Br. at 29–34. The district court rejected these arguments, reasoning that (1) the fact that some witnesses are gang members, "rather than simply his friends or associates[,]

does not directly advance the issue of possession," and (2) Peete's gang membership does not explain his presence at the altercation or his ability to possesses a weapon more readily than a non-gang member. R. 54 (Order at 6–8) (Page ID #243–45). Neither reason supports exclusion of this evidence.

First, evidence of Peete's gang affiliation, and specifically his status on the Disciples' security team, serves as a "prelude" to the charged crime and is "directly probative" of Peete's alleged possession. *Hardy*, 228 F.3d at 748. As the government notes, the alleged reason that Peete was present during the altercation on October 28, 2013 was because another gang member (W-2) had ordered Peete to assist him as part of Peete's duties as a security team member. *See* R. 45 (Gov't Opp'n at 2) (Page ID #210) (explaining that members of the security team "protect fellow Gangster Disciples [and] retaliate against members of rival gangs if necessary"). Peete's gang affiliation, therefore, is not a separate, or tangential, aspect of the government's case; rather, it is the catalyst for all of the events underlying the charged crime. This case is thus distinguishable from *Brown*, where we concluded that evidence of the defendant's past domestic violence was "not necessary or integral to telling the story of what occurred in the early morning on December 25, 2015." 888 F.3d at 838. Unlike the evidence at issue in *Brown*, evidence of Peete's gang affiliation *is* intrinsic to telling the story of why he was allegedly present during the specific altercation on October 28, 2013. Indeed, when speaking with W-3, Peete explained his presence at the altercation in terms of his gang affiliation and his duty toward W-2 generally. *See* R. 45 (Gov't Opp'n at 3–4) (Page ID #211–12).

In response, Peete contends that the October 28, 2013 altercation was *not* gang-related but, instead, was a personal dispute between W-2 and W-1's boyfriend. Appellee Br. at 8. True, the government's proffered evidence indicates that, following the October altercation, the Disciples determined that W-2 had inappropriately recruited Disciples gang members to assist him in a personal issue. R. 45 (Gov't Opp'n at 5) (Page ID #213). However, simply because the Disciples later determined that the altercation should not have involved gang members does not indicate that, at the time of the altercation, Peete was responding to W-2's request in Peete's personal capacity. In other words, this evidence is probative to show Peete's understanding and motive on October 28, 2013; that probative value is not fatally undermined by subsequent acts. This is particularly true since, as noted above, Peete himself allegedly described the altercation in terms of his responsibilities as a security team member. *Id.* at 3–4 (Page ID #211–12).

Similarly, contrary to the district court's conclusion, evidence of Peete's gang affiliation was "directly probative" of his reason for possessing a firearm on October 28, 2013. While the general public may also have access to firearms, Peete was a member of the Disciples' security team and was therefore required to be armed. R. 45 (Gov't Opp'n at 2) (Page ID #210). Additionally, because there will presumably be a dispute at trial as to whether Peete was the individual holding a firearm during the altercation, *see* Appellee Br. at 7–8, evidence that (1) Peete was expected to assist W-2 as a member of the security team, and (2) security team members are expected to be armed,[8] certainly indicates that Peete, rather than someone else,[8] was the individual

---

[8]After all, a witness identified someone other than Peete as the alleged shooter. R. 45 (Gov't Opp'n at 3 n.2) (Page ID #2110.

seen allegedly shooting W-4 and assaulting W-1's boyfriend. Notably, we have previously permitted "intrinsic" evidence of past or contemporaneous bad acts to illustrate how or why a defendant might be in possession of a firearm. *See, e.g.*, *Till*, 434 F.3d at 883–84 (evidence of drug possession showed defendant's motive for possessing a firearm—to protect drugs found in a car); *United States v. Price*, 329 F.3d 903, 904–06 (6th Cir. 2003) (concluding that a certificate showing defendant's completion of a gun safety course was "intrinsic" evidence and showed that the defendant intended to possess the firearms located in his and his wife's home); *United States v. Pratt*, 704 F. App'x 420, 423–24 (6th Cir. 2017) ("Evidence related to Pratt's drug-trafficking thus arose from the same events as the felon-in-possession charge, formed an integral part of the witness testimony in this case, and completed the story of how and why Pratt came into possession of several of the guns." (internal quotation marks omitted and alterations incorporated)).

Finally, evidence of Peete's gang affiliation "forms an integral part of" W-3's testimony and, more specifically, Peete's own statements regarding his involvement in the altercation in October 2013. *Hardy*, 228 F.3d at 748. Similar to evidence of the shooting, Peete's gang affiliation is a significant component of W-3's testimony. For instance, Peete's purported statement to W-3 ("Tell 'em I'll get every one of them bitches") is primarily understood in the context of W-3's comments regarding Peete's shooting of W-4. R. 45 (Gov't Opp'n at 3–4) (Page ID #211). As the government explained in its opening brief, W-4 was a former member of the Disciples, thereby providing context for Peete's comment that he would "get" all of the individuals involved in the altercation. Appellant Br. at 30. Peete's statements about his actions during the shooting (which we have already held are admissible) are also inextricably intertwined with

Peete's comments about W-2's decision to involve Disciples members in the altercation, as well as Peete's own reasons for participating in the incident. R. 45 (Gov't Opp'n at 4) (Page ID #212); *see also United States v. Payne-Owens*, 845 F.3d 868, 874 (8th Cir. 2017) (concluding that evidence of the defendant's gang affiliation was relevant to show the defendant's motive for possessing a weapon and to provide context for the defendant's own statements about his gun possession). Finally, although witnesses could, theoretically, state that they and Peete were "friends" or "associates" of Peete's, this description unnecessarily sanitizes their testimony and removes the probative context of their true relationship with Peete.

In sum, given the connection between Peete's presence at the altercation and his membership in the Disciples, the probative value of Peete's status as a security team member, and the importance of Peete's gang affiliation to W-3's testimony, evidence of Peete's membership in the Disciples was correctly classified as res gestae or intrinsic evidence. The district court abused its discretion in finding otherwise.

### 2. Admissibility Under Rule 404(b)

In its final argument on appeal, the government asserts that even if evidence of Peete's gang affiliation was not "intrinsic" to his alleged possession of a firearm with an obliterated serial number, the district court abused its discretion by refusing to admit the evidence under Rule 404(b). Appellant Br. at 42–48. Because Peete's gang affiliation was admissible to show Peete's motive and opportunity to possess the firearm at issue, we agree.

As noted above, Rule 404(b) concerns evidence of the defendant's "crime, wrong, or other act" and prohibits using those acts "to prove a person's character in order to show that on a

particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Thus, admissibility under Rule 404(b) "requires (1) use of evidence for a proper purpose (that is, other than as character or propensity evidence), (2) relevance, (3) that the evidence not be substantially more unfairly prejudicial than probative pursuant to Rule 403, and (4) that the court give a limiting instruction, if requested." *Stout*, 509 F.3d at 799. "In determining the admissibility of bad acts evidence under Rule 404(b), a trial judge is accorded broad discretion." *Id.* (internal quotation marks omitted).

With respect to the proper standard of review for Rule 404(b) determinations, we have previously recognized our own internal split regarding the applicable standard. *See Gibbs*, 797 F.3d at 421 n.2. While many panels have applied a blanket "abuse of discretion" standard to all evidentiary issues, *id.*, other panels have recognized the legal and discretionary aspects of Rule 404(b) review, *id.* at 421. Under the reasoning of the latter line of cases, we first "review for clear error whether there is a sufficient factual basis for the occurrence of the 'bad act' that is being proffered as evidence." *Id.* at 422. Next, "we determine *de novo* whether the evidence was proffered for an admissible purpose. Third, we review for an abuse of discretion whether the probative value of the proffered evidence is substantially outweighed by any undue prejudice that will result from its admittance." *Id.* (citation omitted). We will examine Peete's case under this more nuanced standard.

As an initial matter, Peete did not challenge the sufficiency of the evidence showing that he was a member of the Disciples, either before the district court or this court. *See* R. 54 (Order at 8) (Page ID #245); Appellee Br. at 7–8 (only arguing that the government has not produced

sufficient evidence that Peete was the shooter). Thus, we turn to the question of whether, under de novo review, the district court erred in concluding that evidence of Peete's gang affiliation was not admissible for a proper purpose.

The government first asserts that "Peete's position on the Gangster Disciples security team required him to carry a firearm at all times and that he brought the gun to the Lee Street confrontation while carrying out Witness 2's order to help hunt down Witness 1's boyfriend." Appellant Br. at 43. Such evidence, the government contends, illustrates Peete's motive and explains why Peete may have wanted to possess a weapon on October 28, 2013. *Id.* In reviewing this evidence, the district court concluded that because Peete's motive was not an element of the charged crime, it was not probative of an issue before the jury. R. 54 (Order at 8) (Page ID #245). However, evidence of motive is admissible under Rule 404(b) even if a particular mental state is not an "element" of the crime charged. *See United States v. Jobson*, 102 F.3d 214, 221 (6th Cir. 1996) (considering the defendant's motive to possess a firearm).

Furthermore, as the government correctly notes, Peete was allegedly present during the October 28, 2013 altercation in order to fulfill his duties as a security team member (duties which included being armed). Thus, Peete's gang membership is clearly probative of his motive to possess a firearm on the particular day described in the indictment. *See United States v. Woodley*, 727 F. App'x 136, 139–40 (6th Cir. 2018) (concluding that evidence of the defendant's gang affiliation explained his motive for shooting a witness, thereby illustrating that defendant had illegally possessed a firearm); *see also United States v. Butler*, 71 F.3d 243, 251 (7th Cir. 1995) (noting that "the fact that Butler held a position as a gang security guard does make it more

probable that Butler possessed the gun and was aware he possessed it"). And because Peete's motive to possess a firearm is tied to his particular role within the Disciples, rather than his membership in a gang generally, evidence of Peete's gang affiliation is even more probative than it might otherwise be. *See United States v. Gordon*, 496 F. App'x 579, 583 (6th Cir. 2012) (concluding that "because [the defendant] belonged to a violent gang that preferred small, concealable weapons," the defendant's gang affiliation illustrated his motive to possess such a firearm). Finally, because Peete's involvement in the shooting was at the direction of W-2 (a Disciples member), gang evidence explained Peete's motive for being present during the October altercation. Indeed, the district court appeared to credit this argument in its order. *See* R. 54 (Order at 8) (Page ID #245) ("Defendant's membership on the security team may explain his motive for appearing at the altercation on Lee Street with a firearm.").

Peete's gang affiliation is also probative of Peete's opportunity to possess the weapon and, specifically, a .38 revolver with an obliterated serial number.[9] "Evidence used to establish opportunity is evidence that shows access to or presence at the scene of the crime or the possession of distinctive or unusual skills or abilities employed in the commission of the crime charged." *Jobson*, 102 F.3d at 221 (internal quotation marks omitted). Both reasons apply to Peete's case. First, as noted above, Peete's status as a security team member and his responsibility to respond to W-2's request clearly illustrates Peete's "opportunity" to be present during the October 28, 2013

---

[9]In examining this issue, the district court again relied on the fact that "opportunity" is not an element of firearm possession. For the same reasons explained above, this was an incorrect basis upon which to exclude evidence of Peete's gang affiliation.

25

altercation. Second, Peete's gang membership is strongly probative of his opportunity to possess a gun with an obliterated serial number, as charged in Count II. As this court has explained, a defendant's membership in a gang can help to explain his ability to possess a particularly dangerous firearm. *See id.* ("Although we recognize that most people not belonging to gangs have access to firearms, most people do not own or have access to semi-automatic assault rifles."); *Gordon*, 496 F. App'x at 583 (determining that evidence of the defendant's gang affiliation explained why he may have had a sawed-off shotgun); *see also United States v. Santiago*, 344 F. App'x 847, 851 (4th Cir. 2009) (concluding that there was sufficient evidence to show that the defendant knew the gun he possessed had an obliterated serial number in part because the defendant was a gang member with a good reason to possess an untraceable weapon). The district court failed meaningfully to differentiate Peete's case from *Gordon* and *Jobson*; instead, the district court appeared to focus generally on Peete's possession of a .38 revolver, rather than his possession of a .38 revolver with an obliterated serial number. *See* R. 54 (Order at 8–9). As explained, when examined in relation to Count II, both *Gordon* and *Jobson* support admission of evidence relating to Peete's gang affiliation under Rule 404(b).

### 3. Rule 403 Balancing

Having determined that evidence of Peete's gang affiliation is admissible both as res gestae and to show his opportunity and motive under Rule 404(b), we now consider whether the probative value of such evidence is "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. We review the district court's conclusion on this issue for abuse of discretion. S*ee Churn*, 800 F.3d at 779; *Gibbs*, 797 F.3d at 422.

In this case, the district court significantly underestimated the probative value of Peete's gang affiliation, particularly as it relates to Peete's opportunity and motive to possess a firearm with an obliterated serial number. *See Whitt*, 752 F. App'x at 306 (noting that the court's review of the district court's Rule 403 analysis "is informed in this case by the district court's legal underestimation of the highly probative value" of the evidence). Moreover, while evidence of Peete's gang affiliation is certainly prejudicial to his case, given the probative value of this evidence, we cannot say that the probative value is *substantially* outweighed by unfair prejudice. This is particularly true when we assume, as we must, that the district court will provide the jury with a detailed instruction regarding the proper use of this evidence. *See Jobson*, 102 F.3d at 222 ("When evidence is admitted under Rule 404(b), the jury must be clearly, simply, and correctly instructed concerning the narrow and limited purpose for which the evidence may be considered." (internal quotation marks omitted)); *id.* ("After admitting evidence under Rule 404(b), the district court must carefully identify, in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden in the first sentence of Rule 404(b)." (internal quotation marks omitted)). Considering all of the factors discussed above, the district court abused its discretion when it excluded evidence of Peete's gang affiliation under Rule 403.

Finally, two notes of caution moving forward. First, our decision today considers only the evidentiary objections currently raised by the defendant and the district court's related order. We recognize that "[t]he trial in this case has still not occurred" and that "[t]rials are uncertain

creatures." *Stout*, 509 F.3d at 803. Thus, the district court is certainly permitted to reassess the admissibility of this evidence in light of circumstances that arise at trial.

Second, much of the probative value of Peete's gang affiliation is predicated on certain realities or beliefs concerning gang members, namely that gang members (rather than other criminals or members of the public) are more likely to possess firearms with obliterated serial numbers. Similarly, Peete's membership on the security team is probative of his motive and opportunity only to the extent that the jury is informed about the inner-workings of the Disciples. It may be that, based on their own observations of the Disciples' actions, a fact witness (or witnesses) can testify to the inner-workings of the Disciples. But if not, and to the extent the government instead seeks to make arguments regarding general aspects or realities of gang members, those issues may require more specific information provided by expert witnesses. *See United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (explaining that law-enforcement expert testimony is usually relevant when it involves "evidence regarding the inner-workings of organized crime"). Accordingly, we do not fully agree with the government's contention that expert testimony is categorically unnecessary in Peete's case. *See* Oral Arg. at 34:36–35:55. Of course, these issues must be taken up first, if at all, by the district court, with the benefit of the record evidence before it. *See Rios*, 830 F.3d at 413 (noting that it is within the district court's discretion whether to admit expert testimony). Should such expert evidence be deemed necessary by the district court, the government is reminded of the importance to separate an officer's factual testimony from his or her expert testimony. *See id.* at 414–16 (explaining the potential problems with permitting one witness to provide both fact and expert testimony and noting that "the district

court and the prosecutor [should] take care to assure that the jury is informed of the dual roles" (internal quotation marks omitted)).[10]

### III. CONCLUSION

For the reasons set forth above, we **REVERSE** the district court and **REMAND** the case to the district court for further proceedings consistent with this opinion.

---

[10]This direction is, of course, predicated on the district court determining that an officer or witness is properly characterized as an expert under Federal Rule of Evidence 702. *See Rios*, 830 F.3d at 412–13 (explaining the three-step test for admitting evidence under Rule 702).