RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0079p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEREMY BROWN,

*Defendant-Appellant.*

No. 17-5718

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:16-cr-20143-1—Samuel H. Mays, Jr., District Judge.

Decided and Filed: April 25, 2018

Before: MERRITT, WHITE, and DONALD, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Unam Peter Oh, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for
Appellant. Karen Hartridge, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee,
for Appellee.

_____

## OPINION

_____

BERNICE BOUIE DONALD, Circuit Judge. Jeremy Brown challenges the sufficiency
of the evidence to support a jury's verdict that he was guilty of being a felon in possession of a
firearm, in violation of 18 U.S.C. § 922(g). Defendant was arrested and later indicted after he
was involved in a domestic dispute where a gun was discharged and left at the scene. At trial,
defendant's theory of the case was that the gun in question belonged to his then-girlfriend.

On appeal, defendant also challenges an evidentiary ruling at trial permitting as *res gestae* evidence that contained references to prior domestic abuse. For the following reasons, we **AFFIRM**.

## I.

Kimberly Brown and defendant began a romantic relationship in 2011.[1] Ms. Brown testified that in the early morning on Christmas Day 2015, the couple began to argue on the phone about Ms. Brown's whereabouts. Ms. Brown indicated that she was at her aunt's house, and defendant told her that he was coming over. Defendant called Ms. Brown when he arrived; she declined to let him in the house because it would set off her aunt's home alarm system while her aunt was asleep. Ms. Brown told him to come back the following morning. After defendant became agitated, Ms. Brown flipped a light on and off in the kitchen to show that she was, in fact, in the house. Defendant demanded that Ms. Brown leave the house with him, and the couple continued to argue.

Defendant continued to call Ms. Brown and approached the house asking her to come out. He told her that if she did not come out of the house, he was going to "set it off." After hanging up the phone and declining to come out of the house, Ms. Brown heard gunshots, glass breaking, and the security alarm went off. A gun was found between two doors leading to the front of the home, an outer storm door and an inner door, both of which were locked. The glass of the front door was broken. At trial, Ms. Brown's aunt, Claudia Taylor, testified she was awakened by the gunshots. She testified that she did not see who fired the gun but had heard defendant's voice outside.

Ms. Taylor received a phone call from her alarm company, Monitronics, in response to the alarm being triggered. On this phone call, which was admitted in its entirety as an exhibit at trial, Ms. Taylor and Ms. Brown identify defendant as the one who shot at the house. Ms. Brown also identified defendant as "dangerous" and indicated he had a history of domestic violence. The trial court also admitted as evidence two 9-1-1 calls made by Ms. Brown, one simultaneous

---

[1]Although Ms. Brown and defendant share a last name, they are not related. For ease of identification, we refer to Kimberly Brown as Ms. Brown and Jeremy Brown as defendant.

to the incident and one a few hours later, when she was concerned that defendant had returned to the house.  Each of these phone calls also references defendant's history of domestic violence.

The Memphis Police Department arrived, and Officer Phillip Allen testified that he observed glass broken from the storm door and observed a firearm on the ground wedged between the two doors.  The police officers did not recover any spent shell casings outside of the home.  The recovered gun belonged to Ms. Brown, but she testified that she reported it stolen in September 2014 and, at the time, she identified defendant as the person who stole the gun.

Defendant was arrested in January 2016, and the trial occurred in February 2017.  The government submitted testimony by officers from the Memphis Police Department, Ms. Taylor, Ms. Brown, and Peggy Carlson, a custodian of records at Monitronics.  Defendant moved for a motion for judgment of acquittal at the close of all the evidence, arguing that there was insufficient evidence to sustain a conviction.  The district court denied the motion.  After waiting overnight to contemplate his decision on testifying, defendant did not put on any proof.  The jury then found defendant guilty of being a felon in possession of a handgun based on the above facts.  Defendant was sentenced to 109 months' imprisonment.  He filed a timely appeal.

**II.**

Defendant challenges the sufficiency of the evidence to support his conviction under § 922(g).  This Court will uphold a jury verdict in a criminal case if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Soto*, 794 F.3d 635, 657 (6th Cir. 2015) (quoting *United States v. Lutz*, 154 F.3d 581, 587 (6th Cir. 1998)).  We review the evidence in the light most favorable to the government. *Id.* A defendant bears a "heavy burden" when claiming insufficiency of the evidence, and we will uphold a conviction based on circumstantial evidence alone. *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008) (citing *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006); *United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991)).  "[W]e will reverse a judgment for insufficiency of the evidence only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007) (quoting *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991)).

We resolve all issues of credibility "in favor of the jury's verdict." *Fekete*, 535 F.3d at 476 (citing *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006)).

To obtain a conviction under § 922(g), the government must prove three elements: "(1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed the firearm specified in the indictment; and (3) the firearm traveled in or affected interstate commerce." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008) (citing *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003)). In this case, only the element of possession is disputed. A conviction under § 922(g) may be based on actual or constructive possession, *id.*, and circumstantial evidence is alone sufficient for this Court to sustain a conviction, *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014).

Defendant contends that there is a reasonable probability that Ms. Brown possessed the gun at issue inside the home, and that "it was equally probable that Ms. Brown fired the gun from inside the home and dropped it between the doors before the police arrived." (Appellant's Br. at 20.) It is true that there is no direct evidence as to who possessed the gun at any given time. Ms. Brown reported the gun as stolen in September 2014. At the time, she identified defendant to the police as the individual who stole the gun but was unable to offer any evidence to that effect. Yet, there was circumstantial evidence that defendant possessed the gun during the incident at issue here. As defendant submitted no testimony or evidence, the question is only whether substantial and competent evidence supports that the government met its burden of proof.

Circumstantial evidence sufficiently supports the jury's finding that defendant possessed the gun on December 25, 2015. Ms. Brown testified that she saw defendant sitting in his truck in the driveway of her aunt's home. Defendant threatened to "set it off" if Ms. Brown did not come outside. (R. 80, PageID # 815.) Ms. Brown refused, and after she hung up, she heard a gunshot, glass breaking, and the alarm going off. Ms. Brown's aunt, Ms. Taylor, was awakened by the sound of gunshots. (*Id.* at PageID # 761 ("And he kept shooting. It was another shot through the door. Then a few seconds he came right back down to the back of the house and shot through the side of the house.").) Ms. Taylor asked Ms. Brown what was going on and Ms. Brown responded: "It's Jeremy out there. He's angry with me." (*Id.* at PageID # 762.) Ms. Taylor then

heard defendant outside asking Ms. Brown, "Are you coming out now?" (*Id.* at PageID # 762, 779-80.) Because Ms. Taylor was familiar with defendant, she recognized his voice.

Ms. Brown also identified defendant as the perpetrator in a 9-1-1 call. When the dispatcher asked Ms. Brown to explain the reason for her call, Ms. Brown responded that her boyfriend had been on the phone trying to get her to come outside, and then she heard a gunshot and glass breaking and she did not know whether he was still outside. She told the dispatcher that his name was Jeremy Brown and he was responsible for the shooting. She relayed the same information to the alarm company.[2] Officer Allen testified that he observed that the glass of the doors had been broken as if "someone was trying to enter . . . the residence," and the gun was lodged between the two locked doors. (R. 80-1, PageID # 934-35.) Both Ms. Brown and Ms. Taylor testified that the gunshot came from outside the home.

Recorded jail calls also support the jury's conviction. Defendant repeatedly stated that he did not want Ms. Brown to answer calls from authorities, which the jury could have reasonably construed as defendant's attempt to avoid prosecution for the incident. For instance, in one call he referred to his father, saying, "[a]ny number he don't know, he don't answer." (Ex. 2, Audio File "Clip23Redacted," Timestamp 1:23-1:27.) Defendant then explained that his father "told uh his sister, which is . . . my aunt, that he don't . . . let nobody know where he was so, that [INAUDIBLE] be really beneficial for him, you get it?" (*Id.* at Timestamp 1:36-1:50.) In another call, defendant directed Ms. Brown to "just keep doing what you've been doing . . . if it ain't nobody you know, don't even answer." (*Id.*, Audio File "Clip36Redacted," Timestamp 1:47-1:53.) "As far as our auntie go, you know, [INAUDIBLE] one or two things we can do is

---

[2]Dispatcher:    Do you know the name of the boyfriend?
Ms. Brown:    Jeremy Brown.
Dispatcher:    Jeremy Brown. Okay. And um . . . he is your boyfriend?
Ms. Brown:    Yes. He wasn't in the house. He was outside.
Dispatcher:    Oh, okay. Outside the house. Did he break the glass?
Ms. Brown:    Yes.
Dispatcher:    Okay. He is not allowed to be there?
Ms. Brown:    No.
Dispatcher:    Okay. Is he dangerous?
Ms. Brown:    He can be.
(Ex. 3, Monitronics Phone Call.)

don't . . . answer until [INAUDIBLE] next week or just go ahead and be honest and tell her that you don't . . . want to go forward with it." (*Id.*, Timestamp 2:05-2:20.) In another call, defendant called Ms. Brown to find out if anyone had contacted her and if she planned on coming to his "preliminary." (*Id.*, Audio File "Clip51Redacted," Timestamp 1:48-2:10.) He then stated: "folks gonna be calling you, I don't know how this is going to play out . . . it's either one of two things . . . do not answer the phone or if you do have to just tell them folks you don't want to press charges on me." (*Id.*, Timestamp 2:13-2:35.) He then stated: "you don't answer and don't come, then they gonna dismiss this shit . . . and we can just go from there." (*Id.*, Timestamp 2:53-3:00.) In another call, defendant explained that he had been told by someone that "his gal told the prosecutor . . . quote that she didn't want to testify . . . when they gave her a subpoena, she called them and told them that." (Ex. 1, Timestamp 7:23-7:55.)

One month before the trial, defendant again tried to convince Ms. Brown not to testify. He sent her a text message with a link to a website and told her to "[r]ead the part where it says witnesses can plead the fifth. Without accepting the subpoena, you are under no obligation to the courts." (Appellant App'x at 14-15.) He then told her that if she was "going to do it, [she would] have to stop answering the phone for them." (*Id.* at 16.) Mr. Brown responded: "It's says I can do that if I feel I'm going to say something to incriminate myself. . . . You reading it wrong, it want work for me cause I don't have anything to say that would incriminate me. Stop trying to make it seem like I filed a false report. That's what I see you trying to say in your defense against me and that's not right." (*Id.* at 16-18.) In response, defendant asked Ms. Brown to "sacrifice a little in exchange for [his] freedom." (*Id.* at 22.) Ms. Brown responded: "you say you willing to die for me hell you could have took life from me and my aunt." (*Id.* at 24.) Defendant did not deny the accusation.

Viewing the evidence in the light most favorable to the government, there was sufficient evidence for the jury to convict defendant. Significantly, most of defendant's challenges to the evidence question Ms. Brown's credibility. This Court will not overturn a verdict by re-assessing a witness' credibility. *Grubbs*, 506 F.3d at 438-39. There is sufficient evidence that defendant was in possession of the handgun in the early morning hours of Christmas Day, 2015. *See id.* at 439. ("We have defined substantial evidence as . . . 'such relevant evidence as a

reasonable mind might accept to support a conclusion . . . affording a substantial basis of fact from which the fact in issue can be reasonably inferred.'" (quoting *United States v. Martin*, 375 F.2d 956, 957 (6th Cir. 1967)). A reasonable mind could accept that evidence as support for the conclusion that defendant was in possession of the gun.

At trial, defendant argued that there could have been a gun fired inside the house, seizing on the fact that no shell casings were found outside the home, and maintained that the government failed to produce direct evidence that defendant stole Ms. Brown's gun.[3] However, the jury considered these arguments and concluded that defendant was guilty of the instant offense. The evidence was sufficient to sustain the conviction.

## III.

Defendant also challenges the admission of evidence referencing domestic violence at trial as *res gestae*. This Court reviews the district court's evidentiary rulings for abuse of discretion. *United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007). "[R]eversal is appropriate only if the abuse of discretion was not harmless error, that is, only if the erroneous evidentiary ruling affected the outcome of the trial." *United States v. Morales*, 687 F.3d 697, 702 (6th Cir. 2012) (quoting *United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011)). In considering whether an error is harmless, we "must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened." *United States v. Baker*,

---

[3]Defendant also argues on appeal that Officer Allen's testimony about whether the gun was fired from the outside was inconsistent:

> Officer Allen took a photo of a bullet hole left in the ceiling. He first testified twice that the bullet that made the hole would have had to have traveled from the left. When it was pointed out that this trajectory would have been more consistent with a bullet being fired from inside the home, his testimony suddenly became evasive, and he retreated from his prior position by stating that he could not recall his own orientation when he took the photo.

(Appellant's Br. at 28.) However, without any expert testimony, defendant's theory about the trajectory of the bullet is only argument. And without the photographic evidence on which defendant relies, which was not made part of the appellate record, we cannot properly assess defendant's argument. The trial transcripts are also unhelpful. Defendant's counsel focused on the location of the entry of the bullet while trying to undermine the Officer's account of what happened, and pointed out various details in the photographs taken by the Officer. However, the transcript only contains references to "there," "here," and "this," (*see, e.g.*, R. 80-1, PageID # 962-63), which is meaningless without a properly preserved representation of what those words refer to or describe. And, in any case, the jury believed Officer Allen's account and "for the court of appeals to assess witness credibility would be to impermissibly 'invade the province of the jury as the sole finder of fact in a jury trial.'" *United States v. Henderson*, 626 F.3d 326, 341 (6th Cir. 2010) (citation omitted).

458 F.3d 513, 520 (6th Cir. 2006) (alteration in original) (quoting *United States v. Pugh*, 405 F.3d 390, 400 (6th Cir. 2005)). The wrongful admission of evidence of prior bad acts constitutes harmless error "if the record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error." *United States v. Clay*, 667 F.3d 689, 700 (6th Cir. 2012) (quoting *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011)).

Defendant argues that it was an abuse of discretion for the district court to admit three audio tapes of phone calls that referenced domestic violence. Under Rule 404(b), evidence of a "crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed R. Evid. 404(b)(1). This Court recognizes an exception to Rule 404(b) for *res gestae* evidence where the evidence "consis[t] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Olds*, 309 F. App'x 967, 974 (6th Cir. 2009) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)).

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Hardy*, 228 F.3d at 748 (citation omitted).

Over defendant's objections, the trial court admitted Ms. Brown's recorded statements in two 9-1-1 calls and one call with an alarm company, where she references that defendant had a history of domestic violence, concluding that it constituted *res gestae*—or background—evidence. Prior to trial, the district court considered defendant's motion *in limine* raising objections to the three tapes, each of which contain references by Ms. Brown to domestic violence perpetrated by defendant. The district court stated that its preliminary finding was that the calls were "inextricably intertwined" with the event, but that it would reconsider the objections at the appropriate time at trial. (R. 79, PageID # 416.) The district court continued,

As far as the domestic violence part, that's part of judging the circumstances of December 25th. It's intertwined with the event in the sense that she's describing it and her reaction to it, and it's part of the jury's opportunity to judge her credibility about it because I assume her credibility will be at issue.

(*Id.* at PageID # 418-19.)

Defendant re-raised his objections at trial. As to the first 9-1-1 phone call, the district court determined the reference to domestic violence was "a passing reference. It's part of the overall *res gestae*." (R. 80, PageID # 801-02.) On that call, Ms. Brown was waiting for the police to arrive at the home, and she noted that defendant had a history of domestic violence but did not mention any specific incidents.[4]

On the call with the alarm company, Ms. Brown engaged in the following exchange:

Operator: He is not allowed to be there?

Ms. Brown: No.

Operator: Okay, is he dangerous?

Ms. Brown: He can be.

Operator: He can be dangerous. Has he been in the past?

Ms. Brown: Yes.

Operator: How so?

Ms. Brown: Uh, domestic violence.

(Ex. 3.) The district court concluded that it could redact the reference to domestic violence, but that it would be more prejudicial than leaving it in, given the district court's refusal to redact the portion referring to defendant as "dangerous."

---

[4]Operator: So what's going on?

Ms. Brown: My boyfriend, he's on the phone trying to get me out, I think he's been drinking. He had a history of domestic violence, uh, I don't know what he did, he shot firearm where I heard a gun go off. And then I heard glass breaking and somewhere in front of the house.

(Timestamp, 0:58-1:17.)

Finally, on the second 9-1-1 call,[5] which occurred several hours after the incident, the district court found that Ms. Brown's reference to being a victim of domestic violence was a "contemporaneous utterance," concluding that the call was referencing the very recent incident as domestic violence, not a past bad act by defendant. The district court summarized the calls:

> All of these calls . . . are contemporaneous or relatively contemporaneous with the event. . . . So, you have temporal proximity. You have a special connection. You have something that speaks to at least possible intent. So it's res gestae-plus, res gestae and something more, that's coming out of the events, the same events as the charged offense; and I think it completes the story.

(R. 80, PageID # 797.)

Before considering whether the admission was an abuse of discretion, we must address the proper scope of *res gestae* evidence. This question is important in a case alleging a violation of § 922(g), where the issue of possession often is tied to an act or acts that are not a part of the indictment. Specifically, is background evidence about defendant's domestic violence that would otherwise be excluded by Rule 404(b) "inextricably intertwined" with the charged gun possession?

"[T]he 'background circumstances exception' to the general exclusion of other act evidence is not an open ended basis to admit any and all other act evidence the proponent wishes to introduce." *Hardy*, 228 F.3d at 748. This Court has permitted this sort of evidence where there is a "close connection between the charged offense and the proffered background evidence." *Id.* (discussing *United States v. Buchanan*, 213 F.3d 302 (6th Cir. 2000) (finding no abuse of discretion in allowing evidence of prior drug seizures to establish the development of a conspiracy); *United States v. Paulino*, 935 F.2d 739 (6th Cir. 1991) (finding no abuse of discretion in admitting evidence that established a single, ongoing conspiracy because it was not extrinsic to the crime charged); *United State v. Hitow*, 889 F.2d 1573 (6th Cir. 1989) (finding no abuse of discretion in allowing testimony by a coconspirator regarding prior drug transactions

---

[5]Ms. Brown:    The person that broke the glass just sent me a text, uh, I think he's still out watching because the text didn't come in until the police had drove off, so, uh, I'm a victim of domestic violence, and they had asked me if I wanted them to take me somewhere [inaudible] but I don't know if he' sitting outside watching, uh, I need them to be here.

(Timestamp, 0:18-0:43.)

because it was necessary to explain the witness' testimony, proximate to the date of the charged offense, and related to the development of a conspiracy)). We summarized:

> [A]nalysis of our prior cases on this subject reveals that, rather than providing unfettered rein, the definition of background or *res gestae* evidence . . . imposes severe limitations in terms of the temporal proximity, causal relationship, or special connections that must exist between the other acts and the charged offense. Before a court decides whether other acts fall into the "background circumstances" exception to the general proscription against such evidence, it must first analyze the proffered evidence in light of these constraints.

*Hardy*, 228 F.3d at 749. As described above, the *res gestae* exception cannot be broadly applied to completing a story but must specifically involve past acts that establish a close connection. We have noted how *res gestae* can "easily be abused," and the importance for the district court to "keep in mind both the scope of the charges and the narrow purpose for which the *res gestae* exception exists." *United States v. Gibbs*, 797 F.3d 416, 424, 425 (6th Cir. 2015).

We conclude that the district court abused its discretion in declining to redact the tapes that reference domestic violence. As to the first 9-1-1 call and the alarm company call, the district court relied on temporal proximity as to the *calls themselves*, not the temporal proximity of the domestic violence referred to. Even if we assumed that the second 9-1-1 call was referring to the incident, rather than the history of domestic violence, the other two calls clearly are speaking of a history between defendant and Ms. Brown. While there are no specifics, there is nothing to support that these references are intrinsic to the story being told. If anything, the references to domestic violence are exactly what Rule 404(b) is designed to protect against—the admission of evidence that would make it more likely that defendant used a gun here because he had been violent toward Ms. Brown in the past. The crime at issue was defendant's possession of the gun, and references to him being violent in the past or having a history of domestic violence were not necessary or integral to telling the story of what occurred in the early morning on December 25, 2015.

The references to domestic violence were unnecessary to complete the government's story, which narrowly required only a showing of possession of a handgun. Had any references to defendant being "dangerous" in the past or involved in domestic violence been redacted, it

would have had no effect on the foundation of the government's proof—Ms. Brown and Ms. Taylor's testimony regarding the events.**[6]**

However, we also conclude that this wrongly admitted evidence constitutes harmless error. *See Clay*, 667 F.3d at 700 ("[A]n error is harmless unless one can say, with fair assurance that the error materially affected the defendant's substantial rights—that the judgment was substantially swayed by the error.") (quoting *United States v. Murphy*, 214 F.3d 447, 452 (6th Cir. 2001)). We are not convinced that the failure to redact the references to domestic violence affected defendant's substantial rights or that there is a "reasonable possibility" that it has contributed to the conviction. *United States v. DeSantis*, 134 F.3d 760, 769 (6th Cir. 1998). As the district court noted, the references were minimal. The government did not refer to domestic violence in its opening and closing statements, and no witness mentioned or even alluded to domestic violence. The government's proof rested on the identifications of defendant by Ms. Brown and Ms. Taylor and their testimony that the shots came from outside the house. This was buttressed by Ms. Brown's contemporaneous 9-1-1 call as well as her conversation with the alarm company. Further, Ms. Brown testified that her gun had been in defendant's possession since she reported it stolen over a year prior. Finally, defendant's repeated efforts in trying to influence Ms. Brown to avoid testifying "provide basis to believe[] that he" was "conscious of guilt." 2 MCCORMICK ON EVID. § 265 (7th ed.) Therefore, we will not overturn defendant's conviction.

**IV.**

We conclude that the evidence presented at trial, when viewed in the light most favorable to the government, was sufficient to support a conviction. While it was an abuse of discretion to admit evidence referring to defendant's history of domestic violence, that error was harmless. We therefore affirm.

---

**[6]**For example, redacting those portions of the calls would have no effect on the balance of the government's proof with the other factual issues at trial: the lack of spent spell casings, the trajectory of the gunshot from the bullet hole in the ceiling.