RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0245p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAQUAR KEYSHORE LATIMER,

*Defendant-Appellant*.

Nos. 20-3861/3862

Appeal from the United States District Court for the Northern District of Ohio at Akron.
Nos. 5:18-cr-00339-1; 5-14-cr-00442-1—Sara E. Lioi, District Judge.

Decided and Filed:  October 18, 2021

Before:  BATCHELDER, LARSEN, and READLER, Circuit Judges.

_____

### COUNSEL

_____

**ON BRIEF:**  Gary W. Crim, Dayton, Ohio, for Appellant.  Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

### OPINION

_____

CHAD A. READLER, Circuit Judge.  During an unannounced visit to Jaquar Latimer's residence, parole officers observed a pistol sitting in plain view on a loveseat.  A search of the home unearthed two other firearms and nearly a dozen grams of cocaine.

Following his ensuing conviction for possessing drugs and firearms, Latimer was sentenced to 175 months in prison coupled with a consecutive 24-month sentence for supervised-release violations largely premised on the underlying drugs and firearms offenses.  On appeal, Latimer contends that the government failed to show that Latimer possessed the contraband

found at his residence.  Because more than ample evidence connected Latimer to those items, we affirm.

## BACKGROUND

After serving several stints in prison for an array of federal and state offenses, Jaquar Latimer moved into his girlfriend's home on Waterloo Road in Akron.  With this long criminal history came the risk of periodic unannounced searches of his residence by federal and Ohio parole officers.  That risk came to pass one morning when two Ohio Adult Parole Authority officers knocked on the door of the Waterloo home.  Clad in his underpants and undershirt, an apparently freshly awakened Latimer greeted the officers and allowed them to enter the home.  Upon entering, the officers noticed a Sig Sauer 9 millimeter pistol lying on a loveseat a few steps from where Latimer had greeted the officers.  The officers detained Latimer and requested officer assistance to search the entire home.

The search would prove fruitful, from the officers' perspective.  In Latimer's bedroom, amidst his discarded jeans and other personal items, officers discovered large sums of cash, including a six-inch tall stack of single dollar bills.  Next to Latimer's recently slept-in bed were two cell phones.  A third phone was found on the bed.  An officer at the scene dialed Latimer's known phone number, causing one of the phones to ring.  An examination of the phone revealed text messages referencing Latimer's "strap," a coded indication that Latimer owned and was actively using a firearm.

Information extracted from the phones suggested that all three belonged to Latimer.  That information also revealed that Latimer was actively trafficking in powder cocaine out of the Waterloo home.  For instance, officers discovered a selfie of Latimer holding up a wad of cash as well as recent messages in which Latimer discussed exchanging "2 gram" or "soft" (a street name for powder cocaine) at "Waterloo."  In an adjacent bedroom, officers found two additional firearms.  And in the kitchen, officers discovered numerous baggies of cocaine in an upside-down coffee mug as well as a digital scale, a picture of which was saved on one of the seized phones, and a wad of cash in the dishwasher.

Latimer was indicted for possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  A jury found Latimer guilty on both counts.  That verdict coupled with several positive drug screens also resulted in a separate charge that Latimer violated the terms of his then-current federal supervised release.  The district court sentenced Latimer to 175 months of imprisonment on the two counts and 24 months of imprisonment, to be served consecutively, for the supervised-release violations.

## ANALYSIS

Latimer contends there was insufficient evidence to show that he possessed the drugs and firearms discovered at the Waterloo home.  Challenging a jury verdict, however, is an uphill climb, as we must view the evidence in a light most favorable to the government and affirm if any rational juror could have voted to convict.  *See United States v. Bailey*, 973 F.3d 548, 564 (6th Cir. 2020); *United States v. Smith-Kilpatrick*, 942 F.3d 734, 745 (6th Cir. 2019).  Latimer cannot shoulder this "heavy burden."  *Bailey*, 973 F.3d at 564 (quoting *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015)).

For purposes of both 18 U.S.C. § 922(g) (firearms) and 21 U.S.C. § 841(a)(1) (controlled substances), possession of contraband can be shown through either actual or constructive possession.  *See United States v. Hunter*, 558 F.3d 495, 503 (6th Cir. 2009) (using the same rubric to assess possession under both statutes).  The government's case here rests on the latter—constructive possession—which can be demonstrated by showing that a defendant had either (1) "dominion or control over the item itself," or (2) "dominion over the premises where the item is located."  *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (emphasis omitted) (quoting *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996)).

Latimer's case turns on the "dominion over the premises" prong.  To set the analytical stage, we note that Latimer stipulated at trial that he was residing at the Waterloo residence on the day of the search, and that there was evidence in the trial record showing that he had unfettered control over the home.  At first blush, that evidence would seem to be enough to establish Latimer's constructive possession of the contraband found there.  *See United States v.*

*Hill*, 142 F.3d 305, 312 (6th Cir. 1998) ("A jury is entitled to infer that a person exercises constructive possession over items found in his home." (cleaned up)).  But when, as here, multiple individuals occupy a residence, we typically require an additional statement or circumstance to connect the defendant to contraband found on the premises.  *United States v. Crumpton*, 824 F.3d 593, 609 (6th Cir. 2016).  The "quantum of evidence" needed to make that showing, however, is "minimal."  *See United States v. Walker*, 734 F.3d 451, 456 (6th Cir. 2013).

The government easily clears that evidentiary bar.  Considerable evidence connects Latimer to the firearms and cocaine found in the Waterloo home.  Start with the pistol found in plain view on the loveseat.  Latimer walked past the pistol only a few seconds before greeting the officers, an indication that he had control over the weapon.  *See United States v. Morrison*, 594 F.3d 543, 545 (6th Cir. 2010) (holding that a gun found in plain view near the defendant established constructive possession); *see also Walker*, 734 F.3d at 457 (holding that a "visible" gun located near the defendant and positioned so the defendant could easily "come up with it like a normal hold" suffices to establish constructive possession of the firearm).  That the pistol's appearance on the loveseat seemed to coincide with Latimer's recent settlement in the home also establishes a temporal nexus between him and the weapon.  *See United States v. Raymore*, 965 F.3d 475, 484 (6th Cir. 2020) (noting that a jury can find constructive possession with circumstantial evidence).  After all, an officer testified that he and other officers had visited the Waterloo home days earlier—when Latimer first arrived there—and had not encountered any contraband, making it logical to surmise that the pistol's sudden appearance in the home was connected to its newest resident.

The remaining firearms were found in an upstairs bedroom, steps away from the room in which Latimer recently had slept and which contained his clothing and personal belongings.  Those facts are persuasive indicators that Latimer possessed those firearms.  *See, e.g.*, *United States v. Whiteside*, 747 F. App'x 387, 401 (6th Cir. 2018) (rejecting a sufficiency of the evidence challenge to a § 922(g) conviction when officers recovered "several firearms from a bedroom that was 'relatively close'" to the defendant's location).  What is more, the jury was presented with messages from Latimer's cell phones indicating that he had recently been in

possession of firearms.  On this record, it was no leap of faith for the jury to conclude that the various firearms in the Waterloo home were connected to Latimer.  *See, e.g.*, *United States v. Whyte*, 795 F. App'x 353, 362–63 (6th Cir. 2019) (observing that "text-message exchanges" suggesting possession of a gun can support a constructive possession theory).

The same is true for the cocaine found in the kitchen.  The government presented evidence showing vast amounts of cash in Latimer's bedroom, including in his jeans.  That evidence, coupled with officer testimony that a "large amount[] of cash" can be a telltale sign of drug dealing, provided a nexus between Latimer and the drugs found in the kitchen.  *See United States v. Taylor*, 471 F. App'x 499, 516 (6th Cir. 2012) ("Possession of a large amount of cash is an indication of illegal drug distribution." (citing *United States v. Warman*, 578 F.3d 320, 334 (6th Cir. 2009))).  So did evidence extracted from Latimer's cell phones.  A photo from one phone showed the digital scale officers discovered in the kitchen near baggies of cocaine.  And messages on the phones suggested that in the days leading up to the officers' visit, Latimer had been dealing the exact drug found in the kitchen from the Waterloo home.  All told, the jury heard circumstantial evidence connecting Latimer with the drugs in his home sufficient to support his convictions.

Latimer views things differently.  He frames his case as one in which the government "seeks to prove possession with nothing other than [his] presence in the house."  But that narrow framing ignores the fact that Latimer both resided in and had dominion over the home.  *See United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) ("Proof that the person has dominion *over the premises* where the [contraband] is located is sufficient to establish constructive possession." (cleaned up and emphasis added)); *see also United States v. Clements*, 333 F. App'x 981, 986 (6th Cir. 2009) (discounting the principle that "[p]resence *alone* near a gun" does not suffice to prove constructive possession where the defendant had "dominion over the home" where the contraband was discovered) (emphasis in original)).  True, both Latimer and his girlfriend resided at Waterloo, meaning a modicum of additional evidence was needed to tie Latimer to the contraband found there.  *Crumpton*, 824 F.3d at 609.  But as already discussed, ample evidence did just that.  Nor, contrary to Latimer's assertions, do we require that the contraband be discovered in a particular room in the house (for example, the defendant's

personal bedroom) to show constructive possession. Rather, for a jointly occupied home, constructive possession can be demonstrated through "minimal," purely circumstantial evidence connecting one occupant to the contraband. *See Walker*, 734 F.3d at 455–56.

Even then, Latimer does not believe that the government tied him to the *specific* firearms and drugs found at Waterloo. We recognize that much of the incriminating evidence the government presented was circumstantial in nature. But that manner of evidence can sustain a conviction even if it does not "remove every reasonable hypothesis except that of guilt." *United States v. Burris*, 999 F.3d 973, 976 (6th Cir. 2021) (internal quotation marks and citations omitted); *see also United States v. Arnold*, 486 F.3d 177, 182 (6th Cir. 2007) (en banc) ("As in all criminal trials, the jury did not have to draw these inferences. But it reasonably could have reached these conclusions—and when that is the case we must respect the jury's inferences over our own."). And from the record amassed at trial, the jury reasonably could conclude that Latimer constructively possessed the guns and drugs found at Waterloo. Beyond that, we will not second guess the jury's verdict. *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014) (explaining that "we do not weigh the evidence, assess the credibility of witnesses, or substitute our judgment for that of the jury" in a sufficiency of the evidence challenge) (cleaned up)).

Finally, because Latimer's challenge to his supervised release revocation is premised entirely on his challenge to his convictions for drug and firearms possession, we see no basis to reverse the judgment of revocation.

## CONCLUSION

For the aforementioned reasons, we affirm the judgments of the district court.