NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0203n.06

No. 22-5616

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 28, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) | |
| ANTWAN LOVELACE, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: SUTTON, Chief Judge; BOGGS and READLER, Circuit Judges.

BOGGS, Circuit Judge. A jury found Antwan Lovelace guilty of unlawful possession of stolen mail worth nearly $445,000, in violation of 18 U.S.C. § 1708. Lovelace appeals on grounds of insufficient evidence, and we affirm.

**Background**

In 2020, mail theft had become a very significant problem in Louisville, Kentucky, with nearly 100 thefts being reported after several master "arrow keys," which open the United States Postal Service's ubiquitous blue collection mailboxes, had been stolen from mail carriers. On December 23, 2020, maintenance personnel who were servicing an air-conditioning unit at 1314 Chinook Trail, in Frankfort, Kentucky, discovered 100 pieces of stolen mail wrapped inside a trash bag located in or under the unit. A United States postal inspector, Joshua Smith, contacted multiple senders of the recovered mail and learned that this mail had been dropped off at various blue collection boxes in Louisville. Then he searched a "law enforcement database" utilized by the

postal service to verify addresses which connected Antwan Lovelace, who had lived in Louisville, with 1314 Chinook Trail, Apartment 8 in Frankfort.

On December 28, 2020, Postal Inspector Smith learned that Lovelace and his friend, Larry Smith, had been arrested in a white Kia Optima in Frankfort, and that acetone cans and a gun were found inside the vehicle. This car was similar to a white Kia Optima that had been seen on video footage at many of the blue-box robbery locations. A search warrant was executed on the Chinook Trail apartment. Joiya Smith, Lovelace's girlfriend, was the only person in the apartment at the time of the search. Stolen mail, checks, debit cards, money orders, gift cards, and chemicals for check washing were found throughout the apartment. A bag containing hundreds of checks was "located underneath the Christmas tree" in the living room. Some checks were also located in a clothes pile in the bedroom. Receipts for deposits of altered checks were also found. In total, over 922 checks were found in the apartment, totaling $442,890.05. Various chemicals, including acetone, turpentine, and mineral spirits, as well as trays, which Smith testified were materials used for check washing, were located in the bathroom.

Numerous documents belonging to Lovelace and his girlfriend were also found in the apartment, including Lovelace's Kentucky driver's license, Social Security card, and birth certificate as well as a banking card, financial transaction records, a Secretary of State filing for an LLC, a state court citation, and medications, all in his name. Joiya's Kentucky driver's license and medications in her name were also found. Lovelace's iPhone was found in the bedroom, where, along with men's hats and shoes, the "majority" of clothes hanging in the bedroom closet were men's clothing. Also, a photo of Lovelace, Joiya, and a child was displayed in a prominent position on a wall in the apartment. On December 29, 2020, the Frankfort post office received a priority-mail parcel from Jamaica, New York addressed to Antwan Lovelace at 1314 Chinook

Trail, Frankfort, Kentucky 40601. And after the search, change-of-address forms were filed by Lovelace and Joiya, indicating that they had moved away from 1314 Chinook Trail, Apartment 8.

The jury heard testimony from Postal Inspector Smith that he interviewed Lovelace while he was in custody after his prior arrest. During that interview, Lovelace stated that he was aware of two individuals, one named Carl, "who controlled the market on stolen checks" in the Louisville area. Lovelace stated that he would assist in a stolen-check scheme by contacting individuals through social media and asking for specific bank-account information so that they could receive early COVID money, and he would refer that information to Carl. Lovelace also stated that he was familiar with the process by which a stack of 600 checks could be purchased for $600 and were easy to obtain. Lovelace's iPhone had content related to washing checks and searches related to addresses and names of victims in this case.

The defense presented evidence that the lease to Apartment 8 was in the name of Lovelace's brother, that no master arrow keys were found in the apartment, and that no fingerprints or DNA was found on any of the mail. Also, during the search, a check made to Larry Smith and a debit card in Larry Smith's name were found in the apartment. And the defense noted that Inspector Smith had never seen Lovelace at the apartment and that there was no video of Lovelace coming and going into the apartment.

At the close of the government's case, Lovelace made a motion for acquittal, challenging the sufficiency of the evidence under Rule 29 of the Federal Rules of Criminal Procedure. At the close of all evidence, Lovelace did not renew a Rule 29 motion. The jury returned a guilty verdict on the sole count of the indictment and Lovelace was sentenced to the statutory maximum of sixty (60) months. He timely filed this appeal, once again challenging the sufficiency of the evidence.

**Discussion**

When the sufficiency of evidence to support a conviction is challenged,  a jury verdict will be upheld where "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brown*, 888 F.3d 829, 832 (6th Cir. 2018) (citation omitted).  However, a Rule 29 motion is properly preserved for appeal only when a defendant makes a "motion for acquittal at the end of the prosecution's case-in-chief *and* at the close of evidence.  Failure to make the required motions constitutes a waiver of the objections to the sufficiency of the evidence." *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Chance*, 306 F.3d 356, 368-69 (6th Cir. 2002) (emphasis added).  When so waived, a sufficiency of the evidence challenge on appeal is reviewed under a "manifest miscarriage of justice" standard and "we only reverse a conviction if the record is devoid of evidence pointing to guilt." *Ibid*.

Federal law prohibits anyone from "unlawfully ha[ving] in his possession[] any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been . . . stolen, taken, embezzled, or abstracted" "from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier," "knowing the same to have been stolen, taken, embezzled, or abstracted." 18 U.S.C. § 1708.  To prove a § 1708 possession charge the government must establish "(1) possession by the defendant, (2) of property stolen from the mail, (3) which the defendant knew to be stolen." *United States v. Hart*, 640 F.2d 856, 857 (6th Cir. 1981).

Possession can be shown either through actual possession or constructive possession. *United States v. Latimer*, 16 F.4th 222, 225 (6th Cir. 2021).  Since Lovelace's girlfriend was the only person present in the apartment when the police discovered the stolen mail, the government

needed to prove that Lovelace had constructive possession of the stolen mail. Constructive possession can be demonstrated by showing that a defendant had either "dominion or control over the item itself" or "dominion over the premises where the item is located." *Ibid*. Where "multiple individuals occupy a residence, we typically require an additional statement or circumstance to connect the defendant to the contraband found on the premises." *Ibid.* "The 'quantum of evidence' needed to make that showing, however, is 'minimal.'" *Id*. at 225-26.

There is no dispute that the mail found in the apartment was stolen. Lovelace challenges only the possession element, arguing that there was insufficient evidence that he possessed stolen mail. However, sufficiency of evidence is the wrong standard of review. To reverse under the proper manifest-injustice standard, the record must be devoid of evidence pointing to guilt. *Kuehne*, 547 F.3d at 696. Here, the record is replete with evidence of Lovelace's guilt of constructive possession of stolen mail.

The record contains extensive evidence that 1314 Chinook Trail, Apartment 8 was Lovelace's home and that he had dominion over it jointly with his girlfriend. A law-enforcement data base identified him as living in the apartment where a photo of the couple and a child hung prominently on a wall. Many identification documents in Lovelace's name were found there including his driver's license, birth certificate, Social Security card, a court citation, a Secretary of State form, prescription medications, a debit card, and records of financial transactions. A bill addressed to him at that address was also found and after the search the Frankfort post office received a priority mail parcel mailed from Jamaica, New York addressed to Lovelace at 1314 Chinook Trail, Apartment 8. Lovelace and Joiya both filed change-of-address forms with the post office showing that they had moved from the apartment after the search. Further, it appeared that someone else was living in the apartment with Joiya, and Lovelace's iPhone and

men's clothing, shoes, and hats were all found in the apartment's sole bedroom and bedroom closet. "A jury 'is entitled to infer that a person exercises constructive possession over items found in his home.'" *United States v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998) (quoting *USA v. Morris*, 977 F.2d 617, 620 (D.C. Cir. 1991)). And "dominion over the premises . . . is sufficient to establish constructive possession." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009).

The record also contains extensive evidence connecting Lovelace to the stolen mail. *Latimer*, 16 F.4th at 225-26. The stolen mail and materials relating to washing checks were found in plain sight in every room of Apartment 8– the kitchen, the bathroom, the bedroom, and the closets. Checks were found in a clothes pile in the bedroom and even under the Christmas tree. There was evidence on Lovelace's iPhone that he was involved with the stolen money and washing checks. Lovelace knew how to obtain bulk stolen checks and knew how to wash checks. When he was arrested in his car, he stated that he was on the way to deliver acetone found in the vehicle to two individuals involved with check washing.

All of this circumstantial evidence connecting Lovelace to the stolen mail in his home prevents a reversal under a manifest miscarriage of justice standard. The record is replete with, not devoid of, evidence pointing to his guilt.

For the reasons above, the judgment in this case is **AFFIRMED**.