NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0228n.06

Case No. 25-1375

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff - Appellee, | ) | May 22, 2026 |
|  | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| ISRAEL LEE CRUMPTON, | ) |  |
| Defendant - Appellant. | ) | OPINION |

Before: SUTTON, Chief Judge; BOGGS and RITZ, Circuit Judges.

**RITZ, Circuit Judge**. A jury convicted Israel Crumpton of drug-related offenses, and at sentencing the district court applied an enhancement for maintaining a drug-related premises. Crumpton now challenges his convictions and the sentencing enhancement. We affirm.

**BACKGROUND**

I.      **Facts**

Israel Crumpton and his associates sold drugs out of two vacant houses in Detroit. Police learned about the drug activity through a confidential informant ("CI") and began to investigate an individual known as "Man," who was later identified as Crumpton. The CI told police that Man operated out of 7744 East Palmer Street (the "trap house") and 7759 East Palmer Street (the "stash house"). Investigators learned that 7759 East Palmer had previously been associated with Crumpton, and Google searches showed a green pickup truck—registered to Crumpton's girlfriend—parked in front of 7744 East Palmer.

The police saw Crumpton moving frequently between the stash and trap houses; when Crumpton was present, foot and vehicle traffic to the houses increased noticeably, with visitors staying for only a few minutes at a time. Investigators used the CI to conduct two drug buys at the trap house, which they organized via calls to a phone number ending in -7201. During the first buy, Crumpton entered both the trap house and the stash house before selling drugs to the CI out of view. And during the second buy, an unidentified man who answered the -7201 phone instructed the CI to meet at "the spot" where drugs would be ready. RE 97, Trial Tr. Vol I, PageID 894. The drugs from both buys tested positive for fentanyl. GPS data for the -7201 phone showed that the device was usually located at the trap and stash houses or at an address on Whitcomb Street where Crumpton lived with his girlfriend.

Police obtained search warrants for all three addresses. Before officers could execute the warrants, Crumpton left the trap house and drove away in the green truck. The officers arrested Crumpton nearby in possession of the -7201 phone, keys to the stash and trap houses, and $755 in small bills. The phone contained numerous messages organizing drug sales between clients and others involved in the operation.

At the East Palmer properties, officers recovered crack cocaine, fentanyl, heroin, hydrocodone, oxycodone, methamphetamine, firearms, a drug processing center, cash, and other drug paraphernalia. The police also arrested Crumpton's co-defendant Jeffrey Swain and several other people at the trap house. The search of the Whitcomb address similarly recovered drug paraphernalia, cocaine residue, $43,000 in rubber-banded cash, a firearm, and a land bank receipt and utility bill for 7759 East Palmer. A cell phone ending in -3370, recovered from officers' search of the trap house, also contained messages between Crumpton and his girlfriend, including a message where he told her he was at "[t]he trap, as always." RE 98, Trial Tr., PageID 1163-64.

And messages on Swain's phone showed that he and Crumpton discussed their customers and planned who would be "hustling" at the trap house on given days. *Id.* at PageID 1143-45.

About three months later, police searched 7744 East Palmer after receiving an anonymous tip that drugs were being sold from that location. They again arrested Crumpton, who—having been released from custody after his prior arrest—was at the trap house with two other people. Officers also seized drugs and drug paraphernalia from the house and small bills from Crumpton's person.

## II.     Procedural history

The United States charged Crumpton and Swain with conspiracy to distribute and possess with intent to distribute controlled substances, under 21 U.S.C. § 846 (Count One); and possession of fentanyl/heroin, cocaine, and cocaine base with intent to distribute, under 21 U.S.C. § 841 (Counts Two, Three, and Four, respectively). The government also charged Crumpton with being a felon in possession of firearms, under 18 U.S.C. § 922(g)(1) (Count Five). Swain pled guilty, but Crumpton went to trial.

At trial, the jurors heard testimony and saw exhibits describing the above facts. Crumpton did not make a motion for acquittal at the close of the government's case or before the case was submitted to the jury. *See* Fed. R. Crim. P. 29(a). The jurors convicted Crumpton on Counts One, Two, and Four and acquitted Crumpton on Counts Three and Five.

The probation office calculated a recommended United States Sentencing Guidelines range of 46 to 57 months in prison, based on an offense level of 22 and a criminal history category of II. That calculation included an enhancement for maintaining a residence for the purpose of distributing drugs pursuant to U.S.S.G. §2D1.1(b)(12) (the so-called drug-house enhancement), and an enhancement for being an organizer or leader pursuant to U.S.S.G. §3B1.1(c). Crumpton

objected to both enhancements, instead calculating his guidelines range as 30 to 37 months. At sentencing, the district court split the difference. The court applied only the drug-house enhancement, resulting in a guidelines range of 37 to 46 months. The court reasoned that the utility bills, keys to the East Palmer buildings, cash, and other items found on Crumpton's person supported the inference that he maintained the stash and trap houses for the purpose of selling drugs. The district court imposed a within-guidelines sentence of 40 months in prison.

Crumpton appeals his convictions and his sentence. He argues that the government presented insufficient evidence at trial to support his convictions on Counts One, Two, and Four, and that the district court erred in applying the drug-house enhancement.

## ANALYSIS

### I. Standards of review

We review de novo the sufficiency of the evidence to sustain a conviction. *United States v. Curry*, 170 F.4th 559, 566 (6th Cir. 2026). And when evaluating the procedural reasonableness of a sentence, we review the district court's factual findings for clear error and its interpretations of the guidelines de novo. *United States v. Taylor*, 85 F.4th 386, 388 (6th Cir. 2023).

### II. Sufficiency of the evidence

Crumpton argues that the government presented insufficient evidence to support his convictions for conspiracy and possession. But he failed to move for acquittal at the close of the government's case-in-chief or before the case was submitted to the jury, so he forfeited his sufficiency argument. *See United States v. Williams*, 612 F.3d 417, 423 (6th Cir. 2010); Fed. R. Civ. P. 29(a). We thus limit our review to whether Crumpton's convictions represent a "manifest miscarriage of justice," *United States v. Damra*, 621 F.3d 474, 494 (6th Cir. 2010) (citation omitted), and we will reverse only "if the record is devoid of evidence" showing guilt, *United*

*States v. Kuehne*, 547 F.3d 667, 697 (6th Cir. 2008) (citation omitted). Because this record is not "devoid" of inculpatory evidence, we affirm.

### A. Conspiracy

To secure a conviction under § 846, the government had to prove Crumpton's (1) "agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022) (citation omitted). This standard does not require direct evidence of agreement, but only "circumstantial evidence that would allow a jury to infer a common plan." *United States v. Campbell*, 135 F.4th 376, 390 (6th Cir. 2025) (citation modified).

Plenty of evidence supported the conclusion that Crumpton agreed to sell drugs. For example, the government showed that the -7201 cell phone, in Crumpton's possession at the time of his arrest, was filled with messages organizing drug sales. That same phone was used to make the controlled buys with the CI. Moreover, messages on Swain's phone showed that he and Crumpton coordinated directly about the schedule for selling drugs at the trap house. And the jurors heard testimony explaining that the increase in short-stay visitors to East Palmer when Crumpton was present was consistent with drug activity.

Crumpton's criticisms of the government's evidence do not leave the record devoid of evidence of his guilt. Crumpton complains that the government failed to present "corroborating photographs, videos, or recordings" of the controlled drug buys that he organized with the CI; obtain "fingerprints or DNA" from the items it seized; recover the exact money exchanged during the controlled buys; or show that Crumpton himself owned the trap or stash houses. CA6 R. 36, Appellant Br., at 30-32. But he cites no caselaw explaining *why* these omissions invalidate the government's other relevant evidence. *Cf. United States v. Mosley*, 53 F.4th 947, 957 (6th Cir.

2022) ("[The defendant's] agreement to join the conspiracy need not be recorded or even express; it can be inferred from his conduct.") (citation modified).  The inculpatory evidence presented to the jurors was sufficient to find Crumpton guilty under § 846.  *See, e.g.*, *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006).

Crumpton also argues that the drugs in the trap house and stash houses, as well as the -3370 and -7201 cell phones, were not under his "exclusive . . . control."  CA6 R. 36, Appellant Br., at 33.  But the government showed that Crumpton possessed and used both phones.  In fact, the -3370 phone was registered to Crumpton himself, and the -7201 phone, which was used to organize the controlled drug buys, was on Crumpton's person when he was arrested.  Moreover, Swain's phone contained incriminating conversations with an "Israel Crump."  RE 98, Trial Tr. Vol. II, PageID 1144.  Indeed, that different individuals shared the -7201 and -3370 phones could mean that Crumpton and his associates passed the phones between them to coordinate drug sales.

In any event, Crumpton has not summited the "steep climb" necessary to disturb his conspiracy conviction.  *Mosley*, 53 F.4th at 957.  So we affirm.

### B.    Possession with intent to distribute

Crumpton's challenge to his convictions for possession with intent to distribute also fails. To secure a conviction under 21 U.S.C. § 841(a)(1), the government had to prove that Crumpton (1) knowingly (2) possessed a controlled substance (3) with intent to distribute.  *United States v. Allen*, 619 F.3d 518, 522 (6th Cir. 2010).  Possession may be either actual or constructive.  *United States v. Latimer*, 16 F.4th 222, 225 (6th Cir. 2021).

The trial record was not "devoid" of evidence that Crumpton constructively possessed the drugs sold out of East Palmer.  *Kuehne*, 547 F.3d at 697 (citation omitted).  When he was arrested, Crumpton had on his person keys to both properties, which officers had seen him use, and cash in

small bills, consistent with drug dealing. *See Latimer*, 16 F.4th at 226 (noting that "[l]arge amount[s] of cash can be a telltale sign of drug dealing, provid[ing] a nexus between [the defendant] and the drugs found in" his residence) (citation modified). Cell phone GPS data suggested that Crumpton spent significant amounts of time on East Palmer, and corroborating text messages showed that his reason for being at the trap house was to coordinate and execute drug sales. Furthermore, utility bills for the stash house had Crumpton's name on them. And Crumpton was present at the trap house both times that the police arrived to execute search warrants there. All this circumstantial evidence supports the jurors' possession conviction, so their guilty verdict does not represent a "manifest miscarriage" of justice. *Damra*, 621 F.3d at 494.

Crumpton claims that because he did not own "or exclusively control[]" the Palmer Street properties and the drugs were found in common spaces within those properties, the government did "not show that he had actual or constructive possession." CA6 R. 36, Appellant Br., at 35-36. But Crumpton did not have to exercise "exclusive" control over the Palmer Street properties for the convictions to stand. Constructive possession suffices and can be demonstrated by showing that the defendant had "dominion or control" over either (1) the contraband itself or (2) "the premises where the item is located." *Latimer*, 16 F.4th at 225 (citation omitted). And circumstantial evidence can sustain a conviction even if it does not "remove every reasonable hypothesis except that of guilt." *United States v. Burris*, 999 F.3d 973, 976 (6th Cir. 2021) (citation omitted).

Crumpton also argues that the government presented insufficient evidence of his intent to distribute drugs. He claims that because police did not directly witness or videotape the controlled drug buys, the CI's testimony alone was insufficient. But the jurors were entitled to believe the CI's testimony that he spoke to Crumpton to organize and execute the drug purchases. Crumpton's

incriminating text messages corroborated that testimony. And the police found copious amounts of drugs and distribution paraphernalia at the trap and stash houses. *See United States v. Otero*, No. 24-3549, 2025 WL 2662274, at \*6 (6th Cir. Sept. 17, 2025) (finding that, even where the defendant was not directly in possession of drugs, "the amount of cocaine, fentanyl pills, and meth found in the backyard were distribution quantities, which permits an inference that the drugs were intended for distribution, not personal use") (citing *United States v. Castro*, 960 F.3d 857, 866 (6th Cir. 2020)).

On these facts, we must affirm Crumpton's convictions for possession with intent to distribute. *See United States v. Arnold*, 486 F.3d 177, 182 (6th Cir. 2007) (en banc) ("As in all criminal trials, the jury did not have to draw these inferences. But it reasonably could have reached these conclusions—and when that is the case we must respect the jury's inferences.").

## III.    The drug-house enhancement

The district court enhanced Crumpton's sentence under U.S.S.G. §2D1.1(b)(12), which applies to "anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *Taylor*, 85 F.4th at 389 (citation omitted). Although the parties disagree as to whether the enhancement properly applied to both the East Palmer properties and the Whitcomb property, our review of the sentencing hearing indicates that the district court applied the enhancement based on the East Palmer residences alone. We thus limit our review to Crumpton's activity at the East Palmer houses.

The drug-premises enhancement does not apply solely to actual residences. Indeed, we consider not only "whether the defendant held a possessory interest in (e.g., owned or rented) the premises," but also "the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. §2D1.1 cmt. n.17. "When the defendant [does not] formally own the

premises, the touchstone for the maintenance prong is de facto (actual) control." *United States v. Florence*, 150 F.4th 773, 780 (6th Cir. 2025). "That control need not be either exclusive or continuous." *Taylor*, 85 F.4th at 390. And our decision in *Florence* clarified that we apply deferential clear-error review to a district court's application of the maintenance prong to a particular set of facts. 150 F.4th at 782.

Here, the district court did not clearly err in finding that Crumpton exercised actual control over the East Palmer properties. Trial evidence supported the court's determination that Crumpton maintained the properties for the purpose of distributing drugs. For instance, Crumpton had keys to the East Palmer properties when he was arrested after departing the trap house. And Crumpton was routinely present at East Palmer. Text messages showed that Crumpton and Swain frequently coordinated who would be at the trap house to sell drugs, and GPS data placed the -7201 phone, which was on Crumpton's person when he was arrested, at the trap house about 66% of the time its location was logged. Although investigators never directly saw Crumpton selling drugs, they did see Crumpton walk frequently between the trap and stash houses, and the green truck he drove was often parked at the East Palmer properties. Investigators even observed Crumpton shoveling snow in front of the trap and stash houses. Finally, during their search of the Whitcomb residence (where Crumpton lived), officers found a land bank payment and utility bill for the stash house.

Our caselaw illustrates why this evidence supported an enhancement under §2D1.1(b)(2). First, the disputed ownership of the East Palmer properties does not preclude application of the drug-house enhancement. In *Florence*, for example, we determined that the enhancement was proper where a defendant "freely came and went" from a residence where he stored drugs, cash, and other paraphernalia, despite the fact that his father actually owned the residence. 150 F.4th at 782-83. And in *United States v. Hernandez*, 721 F. App'x 479, 485 (6th Cir. 2018), we explained

that "[t]he fact that others could have used the [drug premises] is irrelevant.  What matters, instead, is [the defendant's] relationship to the site at the time he used it."

Nor did the district court lack evidence that Crumpton enjoyed "de facto" control over the East Palmer properties.  *Florence*, 150 F.4th at 780.  Our evidentiary bar for applying the drug-house requirement is "relatively low," such that "drug storage" and "transactions on the property will usually suffice."  *United States v. Terry*, 83 F.4th 1039, 1044 (6th Cir. 2023) (citation modified).  "Acts that evidence 'maintenance'" include "control, duration, . . . supervising, protecting . . . those at the site, and continuity" at the site.  *United States v. Russell*, 595 F.3d 633, 644 (6th Cir. 2010) (citation modified) (interpreting analogous provision in 18 U.S.C. § 856(a)(1)).  And we have found that a defendant "appeared to control access to the home" where he "could come and go as he pleased and was comfortable enough at the residence to take the trash out"—an easy comparison to Crumpton's frequent to-and-fro activity, snow shoveling, and organization of drug sales out of the trap house.  *United States v. Barker*, No. 24-3492, 2025 WL 707870, at *2 (6th Cir. Mar. 5, 2025).  In our view, Crumpton, like the *Barker* defendant, was "more than just a casual visitor" to the properties in question.  *Id.* (quoting *Taylor*, 85 F.4th at 390).

In sum, the government provided plenty of evidence to show that Crumpton asserted "de facto" control through his continuous presence, access, and maintenance of the trap and stash houses.  The district court thus did not clearly err in applying the drug-house enhancement.

## CONCLUSION

For these reasons, we affirm.