NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0132n.06

Case No. 23-3535

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | FILED<br>Mar 06, 2025<br>KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| FREDRICK JOHNSON, | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: MOORE, THAPAR, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. In December 2022, a federal jury convicted Defendant-Appellant Fredrick Johnson for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Johnson seeks a reversal of his conviction and a judgment of acquittal for three reasons. First, he alleges the government failed to present sufficient evidence proving he constructively possessed the firearms or ammunition discovered in his marital home. Second, he argues § 922(g)(1) violates the Second Amendment and seeks de novo review of his constitutional challenge. Third, he claims his attorney's alleged failure to challenge § 922(g)(1)'s constitutionality before the district court supports an ineffective-assistance-of-counsel claim. In the alternative, Johnson requests remand for a new trial based on Juror No. 9's undisclosed prior social interactions with one of the government attorneys. For the reasons below, we AFFIRM.

## I.  FACTS AND PROCEDURAL HISTORY

### A.

Fredrick Johnson, a licensed barber who began cutting hair in his Garfield Heights basement during the COVID-19 pandemic, was convicted in 2009 and 2012 of two different felony offenses.  These convictions prohibited him from possessing firearms and ammunition under 18 U.S.C. § 922(g)(1).  But while executing a search warrant in November 2020, law enforcement found ammunition and three firearms in Johnson's home.  A grand jury subsequently indicted Johnson for being a felon in possession of a firearm or ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Johnson's three-day jury trial began in December 2022.  First, Detective Michael Griffis took the witness stand and described the barbershop setup in Johnson's basement.  He explained that he found two loaded pistols on a stand or shelf directly beneath a counter stacked with barber supplies such as electric razors, trimmers, and various men's haircare products.  Griffis also described the other items found in the basement, such as a men's duffel bag, clothing, and shoes.  Then Detective Shaun Stanton testified about how he had photographed the two firearms in the basement before he proceeded upstairs.  There, he found the third loaded firearm on a bedroom closet shelf alongside letters addressed to Johnson and Johnson's personal checkbook.

Finally, Johnson testified as the sole witness in his defense.  He admitted to his felony status and acknowledged that he knew he was prohibited from possessing firearms or ammunition.  He also admitted knowing about the firearms in the house but explained that his wife, who was often alone when he traveled for work, was concerned for her safety.  For this reason, according to Johnson, she obtained a concealed-carry permit to exercise her Second Amendment right to bear

arms. Johnson further explained that his wife and daughter also performed hair-related services in the basement, which served as a shared workspace.

After both sides rested, Johnson moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. He argued that the government had failed to prove that he intended to exercise physical control over the firearms, a key element of constructive possession. He did not, however, challenge the constitutionality of § 922(g)(1), the statute under which he was convicted. The district court denied the motion, finding that Johnson raised a question of "believability" best suited for the jury to resolve. (Trial Tr. vol. 2, R. 228, PageID 1881).

The next day, the jury returned a guilty verdict. So Johnson renewed his Rule 29 motion, again arguing that the government failed to present sufficient evidence of his intent to exercise control, either actual or constructive, over the contraband. He once more did not raise any constitutional challenges. The district court denied this renewed motion and scheduled sentencing for April 2023.

**B.**

In February 2023, the district court held a phone conference with counsel to discuss a potential juror-bias issue. Robert Patton, one of the prosecuting attorneys in Johnson's case, informed the district court and defense counsel that one of the juror's from Johnson's trial, Juror No. 9, had approached him during an annual pheasant hunting trip. Juror No. 9 mentioned that he recognized Patton from Johnson's trial. Juror No. 9 also told Patton that he had not recognized Patton during voir dire but recognized him on the second day of trial from previous hunting excursions. Patton, on the other hand, had not recognized Juror No. 9 at all during the trial.

The district court ordered the parties to submit their positions on how to handle this new information by February 10, 2023. Then, in April 2023, a week before sentencing, Johnson moved for a new trial alleging that the substance of Juror No. 9's post-trial disclosure revealed jury misconduct. The district court concluded that the prior interactions between Patton and Juror No. 9 created a potential extraneous influence and summoned Juror No. 9 for a *Remmer* hearing. *See generally Remmer v. United States*, 347 U.S. 227 (1954) (mandating the district court hold a hearing to determine the circumstances of a juror's extraneous interaction, the impact upon the juror, and whether the interaction prejudiced the defendant).

During the *Remmer* hearing, the district court learned that Juror No. 9's interaction with Patton involved about fifteen to twenty minutes of casual conversation during a group hunting trip around eleven months before trial. Juror No. 9 did not remember the conversation and described only seeing Patton in passing on that trip. Juror No. 9 confirmed that he did not recognize Patton during voir dire. In fact, he did not recognize Patton until the second day of trial. And even then, Juror No. 9 could not remember from where he recognized Patton. Juror No. 9 explained that he did not alert the court of this prior interaction because the judge had instructed the jurors to inform the court if they "knew or had a relationship with anyone in the courtroom." (*Remmer* Hr'g Tr., R. 230, PageID 1980–81). And Juror No. 9 did not believe this brief engagement was significant enough to constitute "knowing" Patton. (*Id.*). Juror No. 9 informed no one, including the other jurors, of his late recognition. After the hearing, the district court found that Juror No. 9's recognition of Patton during trial did not result in any actual bias and denied Johnson's motion for a new trial.

The district court later sentenced Johnson to 20 months' imprisonment, which reflected a 13-month downward variance from the bottom of his advisory Guidelines range. Johnson timely appealed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

First, Johnson challenges the sufficiency of the government's evidence at trial, arguing that the government failed to prove he had the requisite intent to possess any of the firearms found in his home. This court reviews motions for a judgment of acquittal and challenges to the sufficiency of evidence de novo. *United States v. Ray*, 803 F.3d 244, 262 (6th Cir. 2015). The pertinent question is "whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. Sumlin*, 956 F.3d 879, 891 (6th Cir. 2020) (citing *United States v. Maliszewski*, 161 F.3d 992, 1005 (6th Cir. 1998)). Johnson faces a high bar, as we "examine the evidence in the light most favorable to the government" and draw all inferences in its favor. *Id.* In reviewing challenges to sufficiency, we defer to the jury's credibility determinations and need not "exclude every reasonable hypothesis but guilt." *United States v. Belcher,* 92 F.4th 643, 652 (6th Cir. 2024), *reh'g denied*, No. 22-1650, 2024 WL 1043496 (6th Cir. Mar. 4, 2024) (citing *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997)).

To convict under 18 U.S.C. § 922(g)(1), the government must prove beyond a reasonable doubt that: (1) the defendant was a felon; (2) the defendant knew he was a felon; (3) the defendant knowingly possessed a firearm or ammunition; and (4) the firearm traveled in or affected interstate commerce. *United States v. Ward*, 957 F.3d 691, 696 (6th Cir. 2020) (citing *Rehaif v. United States*, 588 U.S. 225, 237 (2019)). Because Johnson stipulated to all but the third factor, he can prevail only by showing that, after drawing all reasonable inferences in favor of the government,

no rational juror could have found beyond a reasonable doubt that he knowingly possessed the firearms or ammunition discovered in his home.

Possession under § 922(g)(1) may be either actual or constructive. *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013). "Actual possession" requires an individual to have "immediate power or control" over a firearm. *Id.* "Constructive possession" occurs when an individual "knowingly has the power and intention at a given time to exercise dominion and control over [a firearm], either directly or through others." *Id.* (citing *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). The government proceeded on a theory of constructive possession. Johnson argues that the evidence at trial neither placed him near the firearms nor showed that he knew their location. And as a result, Johnson asserts the government failed to show that Johnson intended to exercise control over the firearms. He also claims that the government's failure to present evidence on "how long the firearms had been in each location, who put them there, and whether [he] had even been in those tucked-away places of the house since the firearms had been placed there" prevented it from proving his specific intent to possess the firearms. (ECF 44, Appellant's Reply Br. 2).

Johnson claims that his wife legally owned and possessed the firearms—not him. And he points out that the weapons were found in shared areas of their home. But constructive possession in a jointly occupied home "can be demonstrated through minimal, purely circumstantial evidence connecting one occupant to the contraband." *United States v. Latimer*, 16 F.4th 222, 227 (6th Cir. 2021) (internal quotation marks omitted). Indeed, *Latimer* involved the constructive possession of firearms found in plain view, and in a bedroom "steps away from" another bedroom which contained the defendant's clothing and personal belongings. *Id.* at 226. As such, Johnson's arguments—even if true—do not succeed.

The evidence presented at trial was sufficient to establish constructive possession. Detectives Griffis and Stanton described how the guns were situated when they discovered them. The two Smith and Wessons they found in the basement were in Johnson's personal work area, near men's barber supplies like trimmers and buzzers. The government presented photos of a gun box for a Smith and Wesson containing ammunition, and next to that box they found paperwork and letters in Johnson's name. While Johnson and Stanton disagreed on the exact location of the third firearm—whether it was on top of or locked inside a box—the jury resolved this credibility issue in the government's favor. Moreover, the other contents of the box were clearly Johnson's, including more papers with Johnson's name on them.

This court "cannot overturn the jury's decision merely because it had to draw reasonable inferences to find [the defendant] guilty." *United States v. Arnold*, 486 F.3d 177, 181 (6th Cir. 2007). "[T]he critical point is that the jury could have drawn different inferences from [the government's] evidence, and [this court's] mandate is to affirm when the jury's choice was a rational one." *Id.* at 182. Here, the government's evidence reasonably led the jury to believe that Johnson enjoyed dominion and control which he intended to exercise over the firearms discovered in his shared home, where they were found in plain view among his personal and professional belongings. Beyond that, we do "not weigh the evidence, assess the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014) (citation omitted). The jury's verdict therefore stands.

**B. Constitutionality of 18 U.S.C. § 922(g)(1)**

Johnson next argues that even if the government proved constructive possession, the Supreme Court's decisions in *New York State Rifle & Pistol Association v. Bruen* and *United States v. Rahimi* render his felon-in-possession of a firearm conviction unconstitutional. *See generally*

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); *United States v. Rahimi*, 144 S. Ct. 1889 (2024). As an initial matter, despite conceding that he failed to raise the Second Amendment challenge before the district court, Johnson asks us to apply de novo review. But we review for plain error when the appellant failed to make an argument before the district court. *See United States v. Johnson*, 95 F.4th 404, 415–16 (6th Cir.), *cert. denied*, 144 S. Ct. 2619 (2024) (quoting *Greer v. United States*, 593 U.S. 503, 507 (2021) ("If the defendant has 'an opportunity to object' and fails to do so, he forfeits the claim of error. If the defendant later raises the forfeited claim on appeal, [the] plain-error standard applies." (quoting Fed. R. Crim. P. 51(b))). And Johnson's challenge cannot survive plain-error review.

To satisfy plain-error review, a defendant must show "(1) an error, (2) that was obvious or clear, (3) that affected the defendant's substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Bauer*, 82 F.4th 522, 530 (6th Cir. 2023). An error is clear or obvious when it is not "subject to reasonable dispute." *United States v. Kennedy*, 65 F.4th 314, 325 (6th Cir. 2023) (quoting *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015)). This requires that the error be "'clear under current law,' meaning a finding of clear error is precluded by '[a] lack of binding case law' or a circuit split on the issue." *United States v. Bowers*, No. 22-6095, 2024 WL 366247, at *2 (6th Cir. Jan. 31, 2024) (quoting *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015)).

Johnson was convicted in December 2022 and sentenced in June 2023. At that time—and still true today—there was no "precedent explicitly holding that that § 922(g)(1) is unconstitutional" or even suggesting "that *Bruen* dictates such a result." *Johnson*, 95 F.4th at 417. Still, Johnson argues that the Supreme Court's decision in *Rahimi* "fundamentally alter[ed] the legal landscape" of Second Amendment jurisprudence and that this case should function as a

vehicle for the Sixth Circuit to weigh in on that landscape. (ECF 44, Appellant's Reply Br. 5). His argument is meritless because the Court's decision in *Rahimi* did not address whether § 922(g)(1) is unconstitutional.[1] Moreover, since then, we have held that § 922(g)(1) is constitutional on its face, so Johnson's assertion that a miscarriage of justice has occurred is misplaced.[2] *See United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). In sum, Johnson's challenge to the constitutionality of the felon-in-possession law cannot succeed under plain-error review.

## C. Ineffective Assistance of Counsel

Johnson also asks this court to consider his claim that his attorney was ineffective because trial counsel did not raise any constitutional challenges before the district court. To prevail on a claim of ineffective assistance of counsel, Johnson would have to meet the two-prong test set out in *Strickland v. Washington*, which requires defendants to show that their "counsel's performance was deficient" and that this deficiency "prejudiced the defense." 466 U.S. 668, 687 (1984). But we do not typically address claims for ineffective assistance of counsel on direct appeal. *United States v. Burrell*, 114 F.4th 537, 548 (6th Cir. 2024). Instead, usually defendants must file a § 2255 motion, allowing the district court to properly develop the factual record on counsel's effectiveness. *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). *See also United States v. McCarty*, 628 F.3d 284, 295–

---

[1] Rahimi was convicted under § 922(g)(8), which prohibits any person subject to a restraining order from possessing a firearm. The Court limited its decision solely to the applicability of § 922(g)(8). *Id.* at 1903. Here, Johnson was convicted under § 922(g)(1), which prohibits all felons from possessing firearms. Therefore, our prior decision in *Johnson* still has purchase: *Bruen* challenges to felon-in-possession laws cannot succeed under plain-error review.

[2] We also held that § 922(g)(1) is constitutional "as applied to dangerous people." *Williams*, 113 F.4th at 663, However, we need not explore an as-applied challenge here since Johnson declined to develop his argument for such a claim—stating instead that the difference between the challenges was "immaterial" in his case. (ECF 37, Appellant's Br. 38 n.11).

96 (6th Cir. 2010) (holding that an appellate record based on "unsubstantiated allegations without affidavits from defense counsel or [the defendant]" lacks adequate development).

Here, we cannot fairly evaluate either *Strickland* prong on the current record. The record does not mention counsel's performance; there are no affidavits, declarations, or hearing transcripts addressing the issue. Nor does the record contain even speculation as to whether Johnson was prejudiced by his counsel's alleged error. *See United States v. Gilbert*, 838 F. App'x 181, 182 (6th Cir. 2021). We therefore decline to review Johnson's ineffective-assistance-of-counsel claim at this time.

### D. Juror Bias

Johnson's final challenge to his conviction rests on his assertion that the district court applied the wrong legal standard when it denied his motion for a new trial based on his claim of juror bias. He seeks remand for a new trial, arguing that the district court should have applied the legal standard for juror nondisclosure, as opposed to juror misconduct, in its evaluation of potential juror bias. He also contends that this error caused the district court to improperly limit its analysis to "actual bias" and neglect to address "implied bias." But Johnson faces two problems: (1) his motion for a new trial was based on alleged juror misconduct, not nondisclosure; and (2) even if he meant to raise nondisclosure, the district court sufficiently investigated potential bias and reasonably found none. He cannot overcome either hurdle.

We review the denial of a motion for a new trial for abuse of discretion. *United States v. Solorio*, 337 F.3d 580, 595 (6th Cir. 2003). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016) (citation omitted). Reversal is warranted only if the

error affected Johnson's substantial rights and amounted to more than "harmless error." *See* Fed. R. Crim. P. 52(a); *see also United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003).

According to Johnson, the district court applied the wrong legal standard for juror nondisclosure. But Johnson himself relies on the wrong legal standard. Johnson based his motion before the district court on "the post trial disclosure of Jury *Misconduct*," not juror *nondisclosure*. (Def.'s Mot. for New Trial, R. 195, PageID 1129) (emphasis added). This is a distinction with a difference, as each carries its own legal standard.

The parties agree that for Johnson to secure a new trial based on juror nondisclosure, he would have to make the two-part showing set forth in *McDonough Power Equipment, Inc. v. Greenwood*, that: (1) the juror "failed to answer honestly a material question on voir dire"; and (2) "a correct response would have provided a valid basis for a challenge for cause." 464 U.S. 548, 556 (1984). And "[c]hallenges for cause . . . must be based on a finding of actual or implied bias." *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) (citing *Virgin Islands v. Felix*, 569 F.2d 1274, 1277 n.5 (3d Cir. 1978)). On the other hand, juror misconduct requires a showing of "actual prejudice to the verdict." *See In re Sittenfeld*, 49 F.4th 1061, 1067 (6th Cir. 2022) (citation omitted) ("The mere occurrence of juror misconduct, extraneous information, or improper contact is not, without evidence of actual prejudice, enough to warrant a new trial").

The facts here give rise to potential juror misconduct that requires a showing of actual prejudice. The issue stems from Juror No. 9's late recognition of AUSA Patton, his failure to bring it to anyone's attention, and then two months later informing Patton that he was one of the jurors in Johnson's trial. We have found that a juror's "specific knowledge about or a relationship with either the parties or their witnesses" creates an "extraneous influence." *United States v. Herndon*, 156 F.3d 629, 636 (6th Cir. 1998) (collecting cases). "These types of influences . . . may well

deny litigants their constitutional right to have the case heard by a fair and impartial jury." *Id.* In a post-verdict scenario in which the court discovers extraneous influence, the district court must hold a *Remmer* hearing "to afford the defendant an opportunity to establish actual bias." *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999); *see also In re Sittenfeld*, 49 F.4th at 1066.

In other words, without "actual bias," the extraneous influence does not give rise to a showing of actual prejudice that would warrant a new trial. Here, the district court satisfied itself that Juror No. 9's interactions with Patton before Johnson's trial did not result in any actual bias. For one, at the time of the trial, Juror No. 9 did not recognize Patton's name and did not appreciate that he had any familiarity with Patton until the second day of trial. Even then, Juror No. 9 could not place "where that familiarity came from" and analogized it to recognizing someone a person may have been in line with at the grocery store. (Ord. Den. Motion for New Trial, R. 204, PageID 1423). At the *Remmer* hearing, after having put the pieces together that he had seen Patton during pheasant-hunting trips, Juror No. 9 described their encounters as best he could remember— including his recollection that he talked to Patton for about fifteen to twenty minutes during one of the outings about eleven months before the trial. (*Id.* at PageID 1426). Based on this recollection, Juror No. 9 did not consider his relationship with Patton to be sufficiently significant to count as "knowing" Patton. He, therefore, did not advise the court about it and he did not tell his fellow jurors that he recognized Patton. Consequently, his familiarity with Patton could not have influenced any other juror. And as for Juror No. 9 himself: he stated that his recognition of the attorney had no impact on his feelings concerning the case. (*Id.* at PageID 1424).

In concluding that Johnson had failed to demonstrate actual bias, the district court recognized that "Juror No. 9's failure to recall his prior interaction with Patton in time for the court and the parties to fully interrogate" him about it during *voir dire* was less than ideal. (*Id.* at PageID

1426). But the court correctly observed that a new trial is not warranted every time a juror is placed in a potentially compromising position. *Smith v. Phillips*, 455 U.S. 209, 217 (1982). On this record, we have no reason to question the district court's conclusion after the *Remmer* hearing that Juror No. 9's interactions with Patton did not constitute actual bias.

But even if we were to assume that Johnson intended to argue juror nondisclosure instead of misconduct, the district court committed no error, harmless or otherwise. The first *McDonough* prong—whether the juror "failed to answer honestly a material question on voir dire"—looks to the nature of the juror's omission. 464 U.S. at 556. "[W]here the omission was unintentional, the petitioner must show 'actual bias,' but where the omission was intentional, bias may be inferred." *Zerka v. Green*, 49 F.3d 1181, 1186 (6th Cir. 1995) (quoting *United States v. Patrick*, 965 F.2d 1390, 1399 (6th Cir. 1992)).

Johnson concedes that the district court assessed actual bias but argues it disregarded implied bias. Yet the district court was not required to address implied bias even under the nondisclosure standard because it found Juror No. 9 credible in his testimony that he did not recognize Patton during voir dire and thus did not intentionally omit any information. (*See* R. 204, PageID 1426 ("[E]ven after recognizing [counsel] in the afternoon of the second day of trial, Juror No. 9 was unable to recall where he had previously seen [counsel] until later that evening after he had returned home . . . Juror No. 9[] fail[ed] to recall his prior interaction with [counsel] [during voir dire].")). We accord great deference to the district court's credibility determinations and cannot infer bias here. *United States v. Branham*, 97 F.3d 835, 856 (6th Cir. 1996). We also do not assess this to be an "extreme situation . . . that would justify a finding of implied bias." *Smith*, 455 U.S. at 222 (O'Connor, J., concurring).

Johnson therefore cannot show infringement of his Sixth Amendment right to "trial[] by an impartial jury" under these circumstances.  U.S. Const. amend. VI.

### III.  CONCLUSION

For the reasons stated above, we AFFIRM.